Taft, J.
By the first paragraph of Section 1178-21, General Code, “the director” is “authorized to * * * establish * * * ‘limited access highways’ * * * in the manner * * * in which said director may now * * * establish * * * highways * * i. e., as provided in Section 1178-20, General Code. It is apparently conceded that the director has taken all the formal procedural steps required to establish the foregoing 13.58-mile portion of Route 40 in Madison County as a limited access highway.
It is contended by plaintiffs that the statutes do not authorize the director “to change a short, isolated section of an ordinary state road into a ‘limited access highway.’ ” Although the 13.58-mile section of Route 40 involved in the instant case might be described as *522 a short section of a road, the stipulated facts hereinbefore referred to clearly disclose that there is no justification for a determination that that 13.58-mile section is an “isolated section of an ordinary state road.” It is obviously neither “isolated” nor is it a section of “an ordinary state road.”
There is nothing in the statutes to indicate that the shortness of this section represents any impediment to its establishment as a limited access highway or a part of such a highway. Although the record discloses that sections of Route 40, totalling over 55 of the 227 miles in Ohio, have already been designated as limited access, plaintiffs contend that the 13.58-mile section involved in the instant case “was not being incorporated into an existing or projected limited access highway but was being constituted a limited access highway, in and of itself,” and the director had no authority to do that. This contention is answered by the words of the second paragraph of Section 1178-21, General Code, which clearly contemplate that “an existing highway in whole or part” may be “designated as, or included within, a limited access highway. ’ ’
Plaintiffs state in their brief that “the crux of this case is the meaning of the words,” found in the definit-ition of a “limited access highway” in the fourth paragraph of Section 1178-21, General Code, which words are, “access to which [a limited access highway] may be allowed only at highway intersections designated by the director.” It is the contention of plaintiffs that these words mean that “access [to a limited access highway] is allowable only at highway intersections designated by the director.” If this contention were sound, then, where the General Assembly used the words in the second paragraph of Section 1178-21, General Code, “existing easements of access may be extinguished,” it should have used *523 “must” or “shall” instead of “may.” In our opinion, the words in the fourth paragraph of Section 1178-21, General Code, “access to which may be allowed only at highway intersections designated by the director,” were merely used by the General Assembly to show the extent to which rights of access to a limited access highway might be curtailed or eliminated.
Plaintiffs also contend that the director had no authority to designate the 13.58-mile section of Route 40 involved in the instant case as a “limited access highway, ’ ’ because it was not ‘ ‘ especially designed for through traffic” and consequently could not come within the definition of a “limited access highway” found in the fourth paragraph of Section 1178-21, General Code. It may be observed that, before designating this section of Route 40 as a limited access highway, the director had the duty to determine and presumably did determine that it was “especially designed for through traffic.” Even if plaintiffs did not have the burden of proving that this section of Route 40 was not “especially designed for through traffic,” considerable weight should be given to this administrative determination by the director. See State, ex rel., Speeth et al., Commrs., v. Carney, Aud., ante, 159, 186.
The stipulation, that substantial portions of this section were not “originally ‘especially designed’ as a limited access highway,” is of no significance with respect to this question, since other stipulations indicate that such original design was at least as remote as the year 1837. The mere fact, that a highway is designed so that it may and will be used by abutters and by local traffic, is not inconsistent with a conclusion that such highway is especially designed for through traffic. It is obviously not necessary that a highway be designed exclusively for through traffic *524 in order to be especially designed for through traffic. This court can and will take judicial notice of the facts, that there is very little four-lane divided highway mileage in Ohio and that such highway mileage, at least where it now exists in rural areas in Ohio, is almost invariably a part of a highway clearly and obviously designed principally and especially for through traffic. In our opinion, the stipulated facts require the conclusion as a matter of law that this 13.58-mile section of Route 40 as now constructed was especially designed for through traffic, within the meaning of those words as used in the fourth paragraph of Section 1178-21, General Code.
As we view it, Section 1178-21, General Code, was enacted to authorize and empower the director to take action that he might otherwise have been unauthorized to take with respect to highways, and to avoid consequences from his taking of action in locating and constructing highways that might otherwise have followed his taking of such action. For example, apart from that statute, an abutting property owner has an easement or right of access over an ordinary highway by reason of the fact that his property abuts upon that highway. State, ex rel. McKay, Exr., v. Kauer, Dir., 156 Ohio St., 347, 102 N. E. (2d), 703. As the second paragraph of Section 1178-21, General Code, indicates, the mere designation of an existing highway as a limited access highway does not deprive such abutting property owner of the easement or right of access that he theretofore had. However, with respect to a newly located portion of such a limited access highway, the words of the fourth paragraph of Section 1178-21, General Code, certainly operate to prevent the acquisition by an abutting property owner of any easement or right of access to the relocated portion merely by reason of the fact that his property abuts on such relocated *525 portion. Also, without the provisions of the second paragraph of Section 1178-21, General Code, there may well have been doubt as to the authority of the director to extinguish, especially by condemnation, existing easements of access to a highway. See Pontiac Improvement Co. v. Board of Commrs., 104 Ohio St., 447, 135 N. E., 635, 23 A. L. R., 866; Ellis v. Ohio Turnpike Commission, 162 Ohio St., 86, 120 N. E. (2d), 719. As hereinbefore mentioned, the latter portion of the fourth paragraph of Section 1178-21, General Code, shows the extent to which that authority may be exercised. The provisions of the third paragraph of Section 1178-21, General Code, were obviously enacted to remove any question with respect to the authority of the director to alleviate the consequences of his elimination of access to a limited access highway.
The provisions of Section 1178-21, General Code, do not require the director to extinguish all easements of access to a limited access highway, or to construct so-called “service highways” to provide access to a limited access highway, or to prevent access to a limited access highway except at designated highway intersections. Those provisions merely authorize and empower the director with respect to such extinguishment, construction, and prevention of access. The extent to which he shall exercise the authority and power conferred upon him is left to his discretion. See State, ex rel. Kauer, Dir., v. Defenbacher, Dir., 153 Ohio St., 268, 91 N. E. (2d), 512, and State, ex rel. Allen, v. Ferguson, Aud., 155 Ohio St., 26, 97 N. E. (2d), 660.
As to that portion of the section of Route 40, that is involved in the instant case and extends to the west of Lafayette, plaintiffs argue that property owners on the north side have been treated unequally in the following respects: (1) Prom some, the director *526 has acquired or is seeking to condemn all rights of access; (2) from others, the director has acquired access rights, except for a private drive or drives reserved by such others; and (3) from still others, the right of access has been extinguished from only a part of their property and not from other parts.
Plaintiffs also point out that owners of property, abutting on the south side of that portion of the road west of Lafayette and on both sides of the road to the east of Lafayette, still retain all access rights.
Although Section 1178-21, General Code (see especially second paragraph thereof), apparently authorizes such action by the director, it is contended that, • if so construed, that statute is repugnant to the equal protection clauses of the state and federal Constitutions. In the state Constitution, Section 2 of Article I provides that “government is instituted for” the “equal protection and benefit” of “the people”; and, in the federal Constitution, Section 1 of Article XIV, Amendments, provides that “no state shall * * * deny to any person * * * the equal protection of the laws.”
It may be observed that the director may extinguish an existing easement of access to a limited access highway by purchase, gift, agreement or by condemnation (second paragraph of Section 1178-21, General Code). It is obviously only where such extinguisnment is by condemnation that any constitutional question can possibly be raised. Where the director does proceed to extinguish such an easement of access by condemnation, he is exercising, on behalf of the state, the state’s power of eminent domain; and the owner of such easement of access is, under the applicable statutes, admittedly entitled to compensation in money for such easement of access. In most instances, the value of such owner’s land will be substantially lessened by the extinguishment of such easement of *527 access. However, such lessened value will necessarily be included in the compensation, which the owner will receive for the extinguishment of that easement of access. State, ex rel. McKay, v. Kauer, supra. See Langenau Mfg. Co. v. City of Cleveland, 159 Ohio St., 525, 112 N. E. (2d), 658.
It is apparent that, wherever an easement of access to a highway by an abutting property owner is extinguished, then, to the extent of the inevitable resulting elimination of potential interference with travel on the highway, there will necessarily be an increase of the right of use of the highway by the public, and the taking of such an easement of access will therefore he a taking for the public welfare or for public use within the meaning of those words as used in Section 19 of Article I of the Constitution.
Thus, plaintiffs and other similarly situated property owners, in complaining about the director extinguishing their rights of access, are confronted with the facts that the property rights taken from them are being taken pursuant to an exercise of the state’s right of eminent domain for the public use and the public welfare and in exchange for full compensation. Certainly, therefore, they cannot rely on the ordinary limitations, on the exercise of the right of eminent domain. Babin v. City of Ashland, 160 Ohio St., 328, 347, 348, 116 N. E. (2d), 580; State, ex rel. Bruestle, City Solr., v. Rich, Mayor, 159 Ohio St., 13, 110 N. E. (2d), 778; City of Cincinnati v. Louisville & Nashville Rd. Co., 223 U. S., 390, 56 L. Ed., 481, 32 S. Ct., 267. Also, under the very words of Section 19 of Article I of our state Constitution, ‘ ‘ private property, ’ ’ such as their rights of access, “shall ever be held * * * subservient to the public welfare.” In effect, an owner of property holds title to that property subject to a perpetual optional right of his government to acquire that property for public use on the payment of full compensation in money therefor.
*528 . The only other complaint, that plaintiffs can have about the condemnation of their rights of access to Route 40, is a complaint that the director did not also take such rights of access from other abutting property owners. If that complaint is well founded, it might possibly justify other legal proceedings to require the director to so act. However, the mere fact, if it is a fact, that the director has failed to perform some of his duties, is no reason for enjoining him from performing other duties that he is undertaking to perform.
These plaintiffs are not in the position of parties whose property rights have been interfered with merely by an exercise of the police power or of the power of taxation. Such parties would have received no compensation for the loss resulting from such interference with their property rights, and- therefore they might have a valid complaint because such rights of others similarly situated had not been similarly interfered with. The rights of these plaintiffs have been interfered with not merely by an exercise of the police power or of the power of taxation but by an exercise of the state’s power of eminent domain. To the extent that their rights have been interfered with, there has been a lawful taking of their property for public use and they will be fully compensated.
The judgment of the Court of Appeals is reversed and final judgment is rendered for the Director of Highways.

Judgment reversed.

Matthias, Hart, Zimmerman and Stewart, JJ., concur.
. Weygandt, C. J., dissents.
Bell, J., not participating.