|103   35|
|f107 561|

103   35
133   550

MRS. J. B. RABBITT, Plaintiff, v. WILLIAM M. WILCOXEN, Receiver, Appellant, R. M. DIHEL, et al., Interveners and Appellees.

**Building and Loan Companies:** WITHDRAWAL BY STOCKHOLDER: *Insolvency.* The by-laws of a building and savings association, whose articles of incorporation arranged for a loan fund and an expense fund, provided that any stockholder, after giving thirty days' notice, might withdraw the full amount of his payments to the loan fund, with earnings up to the last dividend period, and that the association should not be liable to pay out on account of withdrawals, during any one month, more than thirty per cent. of the cash receipts of the loan fund during such month. *Held,* that where such association was insolvent, and more than said thirty per cent had been paid out when notices of withdrawals were given, shareholders giving such notices were not creditors with claims, and entitled to be paid in full the amounts by them paid to the loan fund before other stockholders were entitled to anything, but were on a parity with other stockholders · Such by-laws contemplate a going concern.

*Appeal from Polk District Court.*—HON. T. F. STEVENSON, Judge.

FRIDAY, OCTOBER 8, 1897.

THE following, including some provisions of the law of the association, to be noticed in the opinion, is substantially appellees' statement of the facts. "The Union Building & Savings Association was incorporated under the laws of Iowa, on the twenty-sixth of June, 1890, with its principal place of business in the city of Des Moines. The object of the association, as stated in its articles of incorporation, being 'to afford profitable investment of money, and encourage and assist its shareholders in the acquisition of real estate, by loaning money to them, to be paid back in monthly installments, thereby increasing the proportion of home

owners in the country, in the manner and by the means provided in chapter 6, title 9, of the Code of Iowa.' On the fifteenth of December, 1894, Mrs. J. B. Rabbitt, plaintiff in the original cause, petitioned the district court of Polk county for the appointment of a receiver for the association; and on the twenty-eighth day of December, 1894, the court appointed William M. Wilcoxen, Esq., receiver, to take charge of the assets of the association, and collect and convert the same into money, with a view to the winding up of the association. On the fourth day of December, 1895, R. M. Dihel, et al., filed their petition of intervention, and, in a few days thereafter, others filed petitions of intervention, all of said petitions claiming the same relief. The petitions of intervention are substantially the same, and claim that the petitioners filed their notices of withdrawal, as provided by section 9 of article 13 of the by-laws, and for that reason they are entitled to be paid, according to said section 9 of article 13 of the by-laws, prior to the payment or distribution of the funds among the stockholders of said corporation who did not file their notice of withdrawal. They claim that they are no longer stockholders of said corporation, and have not been since the moment of filing their notices of withdrawal, but are creditors with claims, according to the terms of section 9 of article 13 of the by-laws. On the seventh day of December, 1895, William M. Wilcoxen, receiver, filed his answer, and it was agreed that this answer should apply to all the petitions of intervention. Said answer is found on page 11 of the abstract, and in substance states that the association, at the time of filing said notices of withdrawal, was insolvent; that article 17 of the by-laws of said association provides that said association shall not be liable to pay out, on account of withdrawals of all classes of stock during any month, more than thirty per cent. of the cash

receipts of the loan fund during such month; and that there had been, since January 1, 1894, during each month, more than thirty per cent. paid out; and, further, it states that said interveners have not complied with all things necessary in order to perfect their withdrawals, in accordance with the 'Articles of Incorporation and By-Laws' of the association; and, further, it is stated that to allow the claims of these interveners to be paid in full would impair the value of the outstanding securities, etc.; and then prays that the claims of the interveners be adjudged to be on a parity with the claims of the non-withdrawing shareholders of said association, and that they be made to share their pro rata proportion with the other shareholders in the funds coming into the hands of the receiver." The district court determined the issues in favor of the interveners, and gave judgment accordingly, and the receiver appealed.—*Reversed.*

*Wm. Wilcoxen, Bishop, Bowen & Fleming,* and *Sammis & Scott* for appellant.

*Searle & Keating* for C. P. Searle, et al.

*Dudley & Coffin* for R. M. Dihel, et al.

*E. T. Morris* for W. P. Mott, et al.

*C. A. Ballreich* and *Read & Read* for Forston Aker, et al.

*Ayres, Woodin & Ayres* for Paul Longe, administrator, et al.

*J. K. Macomber* for F. K. Irwin, intervener and appellee.

GRANGER, J.—The case involves no controversy
as to general creditors, nor as to any creditors except
in so far as the withdrawing shareholders may be
regarded as creditors, as to which fact there is some
controversy in argument. There are two classes of
persons who claim to be entitled to participate in the
distribution of the assets of the corporation: *First,*
those who gave notice of withdrawal before the appoint-
ment of the receiver, who claim to be preferred, and to
be entitled to full payment before the other share-
holders are entitled to anything; and, *second,* those who
did not give such notice, who claim that all shareholders
(that is, both classes) should share equally. The articles
of incorporation provide for two funds,—a loan fund
and an expense fund. The following is a provision of
the by-laws under which it is claimed that the with-
drawing shareholders should be preferred and first
paid: "Section 9. Any shareholder in good standing,
after giving thirty (30) days' notice in writing, and upon
the surrender of his certificate, may withdraw, after
three (3) months' dues have been paid, the full amount
of his payments to the loan fund, together with the
earnings up to the last dividend period. Said with-
drawals shall be paid according to the priority of
notice." The stock of the corporation is classed from
A to F, but the classification is not important for our
consideration. The following is a further provision of
the by-laws: "Article XVII. This association shall
not be liable to pay out on account of withdrawals of
all classes of stock, during any one month, more than
thirty (30) per cent. of the cash receipts of the loan fund
during such month, upon all classes of stock except
Class F, and except stock issued under the provisions
of Sec. 2 of article VII. of the by-laws. In case of with-
drawal before maturity, there shall be charged against
the book value thereof a withdrawal fee of 10 cents on

each share." By a misappropriation, the loan fund has been used for the expenses of the corporation to an amount in excess of thirty-six thousand dollars, and while, in argument, there is some contention otherwise, the corporation is insolvent. In considering the rights of withdrawing shareholders from such associations, the cases discuss the effect of the association being, at the time of withdrawal, "a going concern," or insolvent, and its affairs being "wound up." It is quite evident that the by-laws of this association were adopted with reference to doing business, rather than with reference to closing up its affairs. This fact is important in determining what must have been the mutual understanding of the incorporators in their adoption of the article and laws, and also the understanding of those who became shareholders afterwards. Section 9 of article 13 gives the absolute right of withdrawal on thirty days' notice, and just as absolute a right to withdraw payments to the loan fund, except that it must be done in a way prescribed. That method is fixed by article 17, which exempts the association from liability for such withdrawals, so that it is not required to pay, in any one month, more than thirty per cent. of the cash receipts of the loan fund during such month. Speak'ng of such an association as a going concern, there would seem to be no question but that a wit'-drawing shareholder, on presentation of his certificate, could demand and should receive payment, in the order of his withdrawal, of as much money as the treasury afforded, of the thirty per cent. specified, and no more. If there were no provision for such payment, none could be made from the fund, and the shareholder must hold his stock or exchange it in the market. The right of withdrawing the stock,— that is, withdrawing the payments,—depends entirely on the by-laws authorizing it. The by-law is not a limitation on a prior right,—that is, a right existing

independent of the by-law, perforce of a person being a shareholder,—but it is a grant of a right, and limited by the terms of the grant.

In *Heinbokel v. Association*, 58 Minn. 340 (59 N. W. Rep. 1050), this particular question is considered. The by-law in that case is so like the one in this case as to make the authority entirely applicable. It is said in that case: "In assuming the relation of a member of the association, plaintiff contracted with reference to, and was to be governed by, its by-laws in so far as they were reasonable, and not opposed to our statutory provisions regulating associations of this character. He agreed to abide by the condition of the treasury in case of a withdrawal, and to take his money when funds properly applicable for the purpose were on hand. He was not to be paid until these funds were in the treasury, and, although he could at any time cease to be a member, and terminate his obligation to make monthly payments, the amount to be returned to him did not then become due or payable except in a certain contingency. If not absolutely and immediately due and payable at withdrawal, it is difficult to see how his cause of action was then maintainable." In that case the questions are considered whether or not a withdrawing shareholder becomes a creditor upon complying with the law for withdrawing his payments, and also whether he could bring an action and obtain judgment against the association when there is no money legally applicable for the payment of his claim. It is held that such a shareholder is not to be regarded as having the rights of the ordinary creditor, and hence that he could not maintain such an action. It is further said in that case: "The right to draw and receive back what has been paid into the treasury by a member of the association exists solely by virtue of the by-laws or the statute. If this right to receive the money out of

the treasury is made to depend upon its condition, the right is not perfect or absolute until that condition exists." In *Association v. Kerr* (Tex. Sup.) 13 S. W. Rep. 1020, where the right of withdrawal was given in the by-laws, and there was a provision that at no time should more than one-third of the funds in the treasury be applied to the demands of the withdrawing stockholders without the consent of the directors, it was held that there could be no recovery by such a stockholder in the absence of a showing that there were funds applicable, or that the directors had consented to the use of other funds. *Christian's Appeal*, 102 Pa. St. 184, involved a question as to the right of withdrawing stockholders to preference after the payment of the general creditors, under by-laws so similar to those in the case at bar as to make the rule of the case authority; and it is there said as to such stockholders: "If the association has been prosperous, they have the right, under certain limitations and restrictions, to demand and receive their proportionate share of the accumulated fund; but if bad investments have been made, or losses have been sustained, before actual withdrawal, they must bear their just proportion thereof.     *     *     *     When a building association has failed to fulfill the object of its creation, and has become hopelessly insolvent, it cannot be justly or equitably wound up on any other principle than that above suggested. After expenses incident to the administration of its assets are deducted, the general creditors, if any, should be first paid in full, and the residue of the fund should be distributed pro rata among those whose claims are based upon stock of the association, whether they have withdrawn and hold orders for the withdrawal value thereof or not. Both classes are equally meritorious, and, in the marshaling of the assets, neither is entitled to priority over the other. The claims of each are alike based

on their relation to the association as members thereof."
The case refers to *Association v. Silverman*, 85 Pa. St.
394; and, while it does not overrule or distinguish it, it
announces the above rule with the former case in mind.
It is not easy to reconcile the two cases in some partic-
ulars, and undoubtedly the last should be taken as the
judgment of the court wherein, if at all, the cases are
not in harmony. The *Silverman Case* is reviewed in
*Heinbokel v. Association, supra* (the Minnesota case),
and the holding is disapproved. In Endlich, Building
Associations (2d ed.), section 114, it is said, speaking
of the by-law provisions of such corporations, that only
a proportion of the funds can be withdrawn for the
purpose of paying withdrawing stockholders: "This,
then, becomes a charter limitation upon the rights of
withdrawing members, and operates to prevent a con-
flict between them and the undisturbed exercise of the
association's corporate functions by narrowing them
down to a certain portion of its assets as the source of
their payment."

It seems to us that these authorities, as well as the
language of the by-laws of the association in this case,
fix a limitation on the rights of withdrawing share-
holders as to the funds applicable to the payment of
their claims, and that beyond such limit they cannot go.
In this case there is, confessedly, no such fund avail-
able. We have seen no case in which the limitation is
like the one in this case, it being limited to thirty per
cent. of the monthly receipts. This limitation, through-
out the authorities, in this country, seems to be of con-
trolling importance. Insolvency but adds to the
strength of such a position, and the holding in *Chris-
tian's Appeal, supra*, is in a case where the corporation
was insolvent, and the rule was there applied. Both
parties have quoted from, and argued the effect of, some
English cases, and, conceding them to announce a dif-
ferent rule (and to quite an extent they do), we are still

content with the rule that is supported by the weight of authority in this country, and best accords with reason. No one contends that such a conclusion is not the equitable one, the contention of interveners being only that a correct legal construction of the by-laws justified their claim, but in that view we do not concur. As we said at the outset, the provision of the by-laws for paying back contributions to the loan fund contemplated monthly receipts to such fund, so that the corporation, as a going concern, could apply a percentage thereof to such a purpose; and there is nothing to show a purpose to make such payments after such receipts ha e ceased, and the only business of the corporation is a final settlement and an equitable division of the assets. We think the judgment should be so changed as to make a pro rata payment of all stockholders, regardless of notices of withdrawal, and the cause is remanded for such a decree.—REVERSED.