ELLEN O'CONNOR et al., Appellees, v. HOME SAVINGS & LOAN ASSOCIATION et al., Appellants.

No. 44271.

Kimball, Peterson, Smith & Peterson, for appellants.

Keenan, Clovis & Sar, for appellees.

STIGER, C. J.—Dan O'Connor, at the time of his death in 1930, was the owner of two certificates of stock in the defendant corporation, the Home Savings and Loan Association, of Council Bluffs, Iowa, each certificate representing twenty shares of corporation stock which was of the par value of $100. He paid $4,000 cash for the stock. Mr. O'Connor died intestate in 1930, and administration was had on his estate. Plaintiffs, heirs of Mr. O'Connor, became the owners of the stock.

Among the powers granted to building and loan associations by Code section 9329 are the following:

"1. To issue stock to members to be paid for in single, stated, or monthly payments. * * *

"3. To permit members, other than holders of guarantee stock, to withdraw all or a part of their stock deposits upon such terms and at such times as the articles of incorporation and by-laws may provide. * * *

"5. To make loans to members on such terms, conditions, and securities as the articles of incorporation and by-laws provide; said loans to be made only on real estate security, or on the security of their own shares of stock, not to exceed ninety per cent of the withdrawal value thereof. * * *

"7. To borrow money for the purpose of making loans to its members, paying withdrawals, paying maturities, paying debts, and for any other purposes within the scope and objects of its articles of incorporation, and to execute written obligations evidencing such indebtedness."

Code section 9313 requires that the articles of incorporation of a building and loan association shall show, among other things, "the plan and terms of withdrawal of members".

Relative to the right of a shareholder whose stock is fully paid for to withdraw the amount of money paid for his stock the articles of incorporation provide:

"Except as hereafter provided, any shareholder not a borrower may withdraw from at any time, and surrender to this Association any share or shares of stock held by him upon giving the Board of Directors thirty days' notice of such intention, and shall receive for the same the actual book value at the time of such notice, as ascertained from the last apportionment, and any subsequent payment made.

"In all cases the withdrawing member shall receive a sum not less than he paid into the Association upon his stock. [Here follow qualifications of the right to withdrawal which are immaterial to the issues presented in this case.]

"The Association shall not be required in any manner to pay withdrawing members to exceed fifty (50) per cent of the money received each month, unless by consent of the Board of Directors. All withdrawals shall be made according to the priority of notice received by the secretary."

On the back of each stock certificate appears the following:

"This stock may be withdrawn at any time by giving thirty days' notice in writing to the Association.

"Upon the expiration of said thirty days, or as soon thereafter as said notice is reached in the order of its filing, the holder and legal owner thereof will receive the amount paid in, and all dividends declared thereon and not already paid."

In April, 1931, the administrator of the estate of Dan O'Connor served notice on the association of his intention to withdraw the sum of $4,000 which is the amount paid for the two stock certificates. On March 5, 1932, the corporation wrote the administrator a letter in which it stated:

"They (the directors) do not think it advisable to borrow money, and they have, therefore, decided, in accordance with the by-laws, to use 50% of the funds received monthly from loan repayment to meet withdrawal demands.

"From the records of the Association, we find that you have made a request for a withdrawal, and such request has been filed in the order of its making. As funds accumulate, it will be paid."

In June, 1932, a general letter was sent to all shareholders stating:

"Your Board of Directors, with due consideration to the safety and welfare of the Association, and after careful analysis of income and earnings, has authorized a semi-annual dividend, payable July 1st, 1932, at the rate of 4% (annually).

"The earnings of the Association, in view of general economic conditions, are very satisfactory, and the condition of the Association from the standpoint of safety and strength is sound."

Another general letter went out in the year of 1932 to the shareholders which contained the following information:

"In order to make provision for the payment. of a semi-annual dividend on July first, it now becomes necessary to restrict all withdrawals and. to set aside the cash receipts from now on to the end of June for two purposes only, namely:

" (1)   The absolutely necessary running expenses.

" (2)   The payment of cash dividends, July 1, 1932. Therefore, the Board of Directors, by unanimous action at its meeting held on April 25, has instructed your Secretary to act accordingly.

"We regret the necessity for this action, but considering all the present circumstances, it seems unavoidable."

■■■   After the above letter was sent out, the directors refused to honor applications of its shareholders for withdrawals and used all the income for payment of dividends and making new loans.  The auditor of state was apprised of and approved this refusal of the board of directors to honor the applications, though the articles of incorporation required the association to pay withdrawing members not to exceed 50% of the monthly receipts.  The approval of the auditor of state did not affect the contractual rights of the plaintiffs with the association.

From the time he made his application for withdrawal in 1931, to November, 1934, the administrator made frequent requests to the officers of the association to honor the application of withdrawal and asked information as to when he might expect the association to carry out the contract.  After October, 1934, Thomas W. Keenan, attorney for plaintiffs, took charge of the matter.  He was advised by counsel for the corporation

that in some instances shareholders who desired to withdraw had been allowed to borrow 90% of the face value of their stock pledging the stock as security for the loan with the understanding that when the note was due the stock would be cancelled and there would be no liability of the stockholder on the note.

Thereupon, the plaintiffs executed an application for a loan of $3,600 under the above loan plan and forwarded it to the defendant corporation, agreeing to waive the balance due of $400. The board of directors passed on the application and authorized a loan to the plaintiffs in the sum of $500. Plaintiffs then withdrew their application for a stock loan and brought this action in May, 1935, to compel the defendants to perform their contract and devote 50% of the monthly receipts to the honoring of applications for withdrawal until plaintiffs' stock had been retired.

The trial court found for plaintiffs, and a decree was entered which permanently enjoined the defendants from using or appropriating more than 50% of the receipts of the association for any month to any other purpose than the retirement of the stock on which notices of withdrawal had been filed until such time as the plaintiffs were paid the sum of $4,000 and defendants were directed to apply 50% of the total monthly receipts of the association to the retirement of stock beginning with stockholders who filed applications for withdrawal and to continue to apply such receipts until plaintiffs were paid the amount of $4,000.

■■■ The contract between the plaintiffs as stockholders and the defendant corporation consists of the certificates of stock together with the charter and by-laws of the association and the statute under which the association was incorporated. 4 R. C. L. 349; 9 C. J. 936; 9 Am. Jur. 109. The contract was, in brief, that the corporation would, on thirty days' notice of an intention to withdraw by a shareholder who was in good standing and was not a borrower, pay to the shareholder the amount paid on his stock, providing however, that the association was not required to pay withdrawing members to exceed 50% of the money received each month. So long as a building and loan association remains solvent, members who are not borrowers may avail themselves of the right to withdraw upon complying with the stipulated conditions. If, however, the association becomes insolvent, the right of withdrawal is lost. The right to withdraw

is applicable only to a going concern. 9 Am. Jur. pp. 114 and 178; Rabbitt v. Wilcoxen, 103 Iowa 35, 72 N. W. 306, 38 L. R. A. 183, 64 Am. St. Rep. 152. Defendants do not claim that the association was insolvent at the time the notice of withdrawal was given in 1931, or that it became insolvent since that time. During the five-year period from 1931, to the commencement of this action, the association has been a going concern, making loans, declaring and paying dividends, and has carried on its business as usual.

In announcing its new loan plan in 1936, the association made the following statements which indicate its solvency and soundness:

"On December 31, 1935, the Association distributed its twenty-sixth semi-annual dividend to stockholders. This dividend was at the rate of 3% per annum, the same as was paid in June of 1935. The dividends earned have never been less than 3%.

"In addition to paying these earnings to stockholders and taking care of the necessary expenses of the business the reserve and undivided profit account was increased by $2,434.17 during the year."

The monthly receipts of the defendant corporation from January, 1936, to the time of the trial in August, totaled $176,000. At the time of the trial, there were 27 applicants whose applications for withdrawals were filed prior to the application of the plaintiffs, the total amount due them being the sum of $9,700.

If the association had applied 50% of the money received each month to the payment of these applications, there would have been ample funds to pay the claim of the plaintiffs. We are convinced that the defendants, in refusing to permit withdrawal by its shareholders, acted in good faith and believed its decision was for the best interest of the members of the corporation. However, the right of withdrawal is a distinguishing feature of building and loan associations and one of the most important rights granted to a certificate holder. The contract was carefully devised by the association, and to protect its interest the articles provided that it should not be required to pay withdrawing members to exceed 50% of the income received each month. · Having entered into this contract with the stock-

holders, it could not repudiate it by refusing to perform, as was done in this case, or by amending or changing the by-laws in a manner that would impair the vested contract rights of its members. In the case of Field v. Eastern Building & Loan Association, 117 Iowa 185, on page 200, 90 N. W. 717, 722, Justice Weaver, in considering the contract rights of a certificate holder in a like association, stated:

"To hold otherwise would be destructive of some of the most fundamental principles of the law of contracts, and announce a doctrine which is not conducive to sound morals. In our judgment, therefore, the changes or amendments made in defendant's by-laws after plaintiff became a stockholder cannot be considered in construing the agreement between them." See 9 Am. Jur. p. 114.

Plaintiffs had an unqualified right of withdrawal after they complied with the conditions and no right to modify or change the contract was reserved by the association.

■■■ To accomplish a reversal, defendants rely on Code section 9362, which reads:

"9362. Quo warranto—receiver. When any building and loan or savings and loan association is conducting its business illegally, or in violation of its articles of incorporation or by-laws, or is practicing deception upon its members or the public, or is pursuing a plan of business that is injurious to the interests of its members, or its affairs are in an unsafe condition, the auditor of state shall notify the directors thereof, and, if they shall fail to put its affairs upon a safe basis, he shall advise the attorney general thereof, who shall take the necessary steps to wind up its affairs in the manner provided by law. In such proceedings a receiver may be appointed by the court and such proceeding shall be the exclusive liquidation or insolvency proceeding and a receiver shall not be appointed in any other proceedings."

The contention of defendants is that the above section provides an exclusive method of supervision and control of the affairs of building and loan associations and an exclusive method of procedure for the correction of illegal and improper acts of the association; that plaintiffs did not have the right to institute this action; and that their only recourse was to complain

to the auditor of state whose duty would then be, under the statute, to advise the directors of their grievance, and, if they failed to remedy the situation complained of, the auditor would then advise the attorney general, whose duty would be to wind up the affairs of the corporation in the usual manner.

We do not agree with the defendants in this construction of the statute. Code section 9362 refers to such wrongful conduct on the part of officers and directors of an association or to a financial condition of the association which would constitute adequate grounds for the appointment of a receiver, the dissolution of the association, and the winding up of its affairs. The refusal of the directors to honor the applications for withdrawal, which refusal resulted in a breach of contract, is not one of the illegal or fraudulent acts contemplated by said section, did not adversely affect the financial condition of the association, and was not a ground for dissolution under the provisions of the section. The statute does not repose in the auditor of state authority to determine the merits of a dispute between a stockholder of the corporation growing out of a breach of contract or to institute proceedings on behalf of a stockholder to enforce his private rights under the contract against the corporation. If this were a suit to liquidate the defendant corporation, we would be inclined to agree with defendants, as the purpose of section 9362 is to provide an exclusive method of procedure for the dissolution of a building and loan association and its liquidation. The statutory proceedings for a receiver are exclusive, and shareholders are precluded from instituting proceedings for dissolution of the association.

We have read the cases cited by appellants, among which are: State of Ohio, ex rel. Bettman v. Court of Common Pleas, 124 Ohio State 269, 178 N. E. 258, 260, 78 A. L. R. 1079; Union Savings & Investment Co. v. District Court, 44 Utah 397, 140 Pac. 221, Ann. Cas. 1917A, 821; Ulmer v. Falmouth Loan & Building Association, 93 Me. 302, 45 Atl. 32.

We find that these cases were brought by the public officer designated by the statute to dissolve and liquidate an insolvent corporation and hold that the statutory method of procedure is exclusive. The reason for the rule is stated in the case of State of Ohio, ex rel. Bettman v. Court of Common Pleas, supra, as follows:

"It would be unfortunate if any single dissatisfied or offended depositor or shareholder of one of these institutions could institute extended and expensive litigation for its dissolution to the great detriment of the many identified with such association, whose interests, and incidentally those of the general public, would be thus seriously jeopardized."

The cited cases are not applicable to plaintiffs' cause of action growing out of the breach of contract.

For five years after the administrator of the estate of Dan O'Connor filed an application for withdrawal, the directors persisted in using all the monthly income for new loans and in the payment of dividends, and refused to recognize the demand of plaintiffs and the shareholders who had previously filed. It is apparent from the record that plaintiffs had no adequate remedy at law for breach of the contract.

The judgment and decree is affirmed.—Affirmed.

ANDERSON, MITCHELL, RICHARDS, HAMILTON, SAGER, DONEGAN, and KINTZINGER, JJ., concur.

MILLER, J., takes no part.