STATE OF IOWA ex rel. F. W. CAIRY, et al., appellee, v. IOWA
CO-OPERATIVE ASSOCIATION, appellant.

No. 49313.

(Reported in 95 N.W.2d 441)

MARCH 10, 1959.

REHEARING DENIED MAY 8, 1959.

James M. Stewart, Wisdom, Sullivan & Golden, and William Wimer, all of Des Moines, for appellant.

Gamble, Read, Howland, Gamble & Riepe, of Des Moines, for appellee.

LARSON, J.—This is the second appeal in a quo warranto suit, brought in the name of the State on the relation of individual citizens, for the immediate dissolution of defendant, Iowa Co-Operative Association, operating under the trade name of "Diamond Laboratories", on the ground that its organization and operations under chapter 499, Code of Iowa, 1950, 1954, were invalid. See State ex rel. Cairy v. Iowa Co-Op. Assn., 248 Iowa 167, 79 N.W.2d 775. In the first appeal we reversed and remanded the matter when the trial court sustained the defendant's special appearance and dismissed the suit. We held therein that the court had jurisdiction of quo warranto actions generally and that section 499.53 of the Code did not deprive the district

court of jurisdiction of the general subject matter. We indicated the proper procedure to assail the standing or right of the citizen to maintain the suit as relators was a motion to dismiss after general appearance. This has been done in the suit now before us, and the basic question presented is whether this suit must be dismissed for want of merit, when it appears under section 499.53 that the right of such an association to exist or continue under the chapter may be inquired into by the attorney general, but not otherwise.

Relators concede that, unless we determine that Code section 499.53 is invalid under the Constitution of Iowa or of the United States, they cannot maintain this suit.

Code section 499.53 provides: "The right of an association to exist or continue under this chapter may be inquired into by the attorney general, but not otherwise. If from its annual report or otherwise, the secretary of state is informed that it is not functioning as a co-operative, he shall so notify the attorney general, who, if he finds reasonable cause so to believe, shall bring action to oust it and wind up its affairs."

As in the prior case relators allege they are citizens and are "graduate licensed veterinarians and are associated with business enterprises which sell serums, virus, vaccines, biologicals, pharmaceuticals and other drugs and supplies to licensed veterinarians and confine their sales of such products to members of the veterinary medical profession", which are in direct competition with defendant, and that the Attorney General of Iowa and the county attorney had been requested to bring such suit, but neither had done so. The district court by ex parte order had granted an application by relators for leave to institute the suit, conditioned upon the filing of an approved bond for costs, which was done.

Following our procedendo of January 11, 1957, to the district court, defendant entered its appearance and moved the court to dismiss plaintiff's petition for, among other reasons, "The relators have no right to bring this suit", it being the exclusive obligation of the attorney general to bring before the court any proper action or inquiry into its right to exist or continue as an association under chapter 499 of the Code.

The trial court overruled all defendant's motions. Permission to appeal from the interlocutory ruling was granted defendant, and it appealed.

Appellant argues (1) that unless section 499.53 is shown to be unconstitutional relators cannot maintain this action and (2) that unless relators disclose involved personal rights or interests they cannot question the constitutionality of the section. These, then, are the vital issues.

Relators contend that section 499.53 violates (1) the provisions of section 6, Article I, Constitution of Iowa, in that its provisions do "not have uniform operation"; (2) section 9 of Article I, Constitution of Iowa, in that the extension of immunity from judicial inquiry violates the rights of other persons and corporations to whom such immunity has not been extended; (3) section 12, Article VIII, Constitution of Iowa, in that it grants an exclusive privilege to a corporation operated for pecuniary profit not available to other corporations; and (4) that it violates the due process clause of section 1 of the Fourteenth Amendment to the Constitution of the United States in that it abridges the privileges or immunities of citizens of the United States and denies to persons within the jurisdiction of the State of Iowa the equal protection of the laws of the State.

Rule 300, R. C. P., provides: "(a) The county attorney of the county where the action lies may bring it in his discretion, and must do so when directed by the governor, general assembly or the supreme or district court, unless he may be a defendant, in which event the attorney general may, and shall when so directed, bring the action. (b) If on demand of any citizen of the state, the county attorney fails to bring the action, the attorney general may do so, or such citizen may apply to the court where the action lies for leave to bring it. On leave so granted, and after filing bond for costs in an amount fixed by the court, with sureties approved by the clerk, the citizen may bring the action and prosecute it to completion."

It is relators' contention that under rules 299 to 305, R. C. P., individuals have been extended the right to bring in the name of the State quo warranto suits challenging the corporate existence or operation of alleged corporations, and to chal-

lenge a corporation exercising powers not conferred by law, but that by section 499.53 they are restricted from so challenging co-operatives under chapter 499, and that such restriction is arbitrary, unjust and unlawful. They contend section 499.53 should be struck down as unconstitutional and that they should be permitted to maintain this suit in behalf of the State under the general quo warranto provisions. R. C. P. 300. We do not agree.

I. It is, of course, relators' burden to negative every conceivable basis which may support this statute. All presumptions are in favor of the constitutionality of the statute and it will not be held invalid unless it is clear, plain and palpable that such a decision is required. Dickinson v. Porter, 240 Iowa 393, 398, 399, 35 N.W.2d 66, and authorities cited therein; Iowa Motor Vehicle Assn. v. Board of Railroad Comrs., 207 Iowa 461, 468, 221 N.W. 364, 75 A. L. R. 1; McGuire v. Chicago, B. & Q. R. Co., 131 Iowa 340, 349, 108 N.W. 902, 33 L. R. A., N. S., 706, and citations; 11 Am. Jur., Constitutional Law, section 138.

The General Assembly has power to enact any kind of legislation affecting the creation and operation of corporations, co-operatives and associations as it sees fit, including how and by whom the corporate existence and operation may be challenged, provided it is not clearly and plainly prohibited by some provision of the State or Federal Constitution. Carlton v. Grimes, 237 Iowa 912, 943, 23 N.W.2d 883, 899, and citations; Wallace v. Pierce-Wallace Pub. Co., 101 Iowa 313, 70 N.W. 216, 38 L. R. A. 122, 63 Am. St. Rep. 389; Union Savings & Investment Co. v. District Court, 44 Utah 397, 140 P. 221, Ann. Cas. 1917A 821; 16 C. J. S., Constitutional Law, section 70. If there are any reasonable grounds for classifications made and they operate equally upon all within the same class, there is uniformity in the constitutional sense.

It is not our province to pass upon the policy, wisdom, advisability or justice of a statute. We have often said the remedy for unwise or oppressive legislation within constitutional bounds is not to be found in the courts, but by appeal to the legislators.

■ Therefore, relators must satisfy us beyond a reasonable doubt that section 499.53 of the Code violates the constitutional provisions invoked and to point out clearly the manner or respect in which it claims they are violated. Dickinson v. Porter, supra; Quong Wing v. Kirkendall, 223 U. S. 59, 32 S. Ct. 192, 56 L. Ed. 350. One who would strike down a statute must show not only that he is affected by it, but that as applied to him the statute exceeds the power of the State. New Orleans Water Works Co. v. Rivers, 115 U. S. 674, 6 S. Ct. 273, 29 L. Ed. 525. This has not been done.

II. In discussing the issue, we note that three subissues are suggested by the briefs: (1) Is a public issue involved? (2) Is any party denied reasonable access to the courts to question the operation of defendant, co-operative, (3) Is the provision that, in case of co-operatives organized under chapter 499, only the attorney general may bring the suit such an unreasonable, arbitrary or unjust discrimination that it is unconstitutional, or is the extension of such co-operative protection against danger of unjust and harassing litigation to be held an illegal privilege or immunity? Assuming that the answer to the first is in the affirmative, the other two are negative.

The discrimination, if such it is, is in the designation by the legislature of *who* may bring a suit on behalf of the State to question the organization and operation of various corporations, co-operatives and associations operating under charters issued by the State. Clearly, unless extended to others by statute, the right and duty are exclusively that of the attorney general, the State's legal officer. State ex rel. Hutt v. Anthes Force Oiler Co., 237 Iowa 722, 729, 22 N.W.2d 324; 44 Am. Jur., Quo Warranto, section 77, page 146.

■ III. Quo warranto, or an action in the nature of quo warranto, is a special proceeding and strictly statutory in character. It is available only where the act complained of is of a public interest and may not be invoked for the redress of a private right or grievance. State ex rel. Robbins v. Shellsburg Grain & Lbr. Co., 243 Iowa 734, 737, 53 N.W.2d 143, and citations; Wallace v. Pierce-Wallace Pub. Co., supra, 101 Iowa 313, 70 N.W. 216, 38 L. R. A. 122, 63 Am. St. Rep. 389; State ex rel. Winterfield v. Hardin County Rural Elec. Coop., 226 Iowa 896,

285 N.W. 219; State ex rel. Maley v. Civic Action Committee, 238 Iowa 851, 28 N.W.2d 467; 74 C. J. S., Quo Warranto, sections 6 and 14; 44 Am. Jur., Quo Warranto, sections 44, 45, pages 118, 119.

However, were it not for the provisions of section 499.53 the relators contend they would be entitled to maintain this suit in quo warranto under rules 299 to 305, R. C. P. On the other hand, were it not for rules 299 to 305, R. C. P., no right to maintain a quo warranto suit would be available to the individual even in the public interest. Thus the question of whether, by providing general rules permitting an individual under certain circumstances to bring such a suit, the legislature cannot restrict its use in other similar circumstances.

IV. From the allegations of plaintiff's petition defendant contends there is considerable doubt that the suit is being brought in the public interest. Rather they say it would seem it is brought by individuals who feel the operation and maintenance of defendant, co-operative, is unfair competition to corporations and businesses in which these parties are interested. If this were so, there would be serious doubts as to the right of relators to maintain this suit or to question the constitutionality of section 499.53. Just being a member of the general public is not enough. State ex rel. Robbins v. Shellsburg Grain & Lbr. Co., supra. In State ex rel. Maley v. Civic Action Committee, supra, 238 Iowa 851, 860, 28 N.W.2d 467, 471, we said: "* * * where forfeiture of a corporate charter is sought, it must appear that interests of the public require such action", but also warned that "in view of the seriousness of the forfeiture of a corporate charter, courts proceed with caution where such relief is asked. [Citing authorities.]"

As a basis for their claim to maintain quo warranto under the Rules of Civil Procedure and chapter 660, relators point out that as private citizens they may do so to vindicate a public right. The loss of substantial income and other taxes is the basis of this public interest as opposed to private interest. State ex rel. Maley v. Civic Action Committee, supra, and citations. If this be accepted as sufficient right to maintain this suit in the public interest, there is also the need to disclose how and in what manner the relators' individual rights are affected by the chal-

lenged statute. New Orleans Water Works Co. v. Rivers, supra, 115 U. S. 674, 6 S. Ct. 273, 29 L. Ed. 525, and authorities cited. This, they allege, is furnished by the allegation that their investments are directly affected by illegal co-operative operations.

However, if it were conceded a public interest is involved and that relators may rightfully raise the constitutional question, our conclusion that section 499.53 is not unconstitutional makes the resolving of these questions of no import here. Thus we pass these academic questions for the time being.

 V. We come now to the basic question involved. If there is any rational basis for applying different benefits and immunities to co-operatives under chapter 499, the legislative discretion in extending the same is not to be lightly set aside. A classification is not arbitrary which rests upon some reason of public policy. Dickinson v. Porter, supra, and citations at page 408 of 240 Iowa. The legislature has the broadest discretion as to what is a public purpose, and courts are quite reluctant to hold reasonable privileges and immunities extended to designated groups in the agricultural field not a public purpose. It may well be that such co-operatives, with the tax exemptions and other special privileges, were thought to be more subject to harassment and challenge than other types of corporations, and that it was in the public interest not to extend such a right to challenge in the courts beyond the State's own legal officer, the attorney general. It is a reasonable premise. It does seem a shallow argument to us to contend that such an officer, because of political or personal interest, would arbitrarily refuse to perform his duty. Arbitrary discretion clearly would not be permitted nor is it contemplated.

VI. The placing of this duty to protect the public interest in the logical legal officer of the State in chapter 499, and not extending it to others under the Rules of Civil Procedure, is not necessarily a special privilege or immunity to co-operatives, nor does it deny anyone reasonable and proper access to the courts for redress of just grievances in behalf of the public. We think there is uniform access by everyone to judicial review when probable cause is disclosed. Under the Rules of Civil Procedure and chapter 660 of the Code, the court may grant permission to individuals, under certain conditions, to maintain the suit on

behalf of the State, and, under section 499.53, individuals may invoke the duty of the attorney general to maintain the suit when reasonable cause appears. Unless the legislature in its wisdom desires to extend the same identical procedure in all instances, it is unnecessary to do so, and especially where there are cogent reasons to do otherwise.

We note there are several other chapters of the Code and other statutes placing similar duties on the attorney general alone, such as the statutes relating to charitable trusts and section 534.101 relating to building and loan associations. We have never considered them discriminatory. Perhaps there the cogent reason is that private parties have no direct interest in the question of any alleged discrimination and therefore cannot urge the unconstitutionality of the statutes. Iowa Life Ins. Co. v. Board of Supervisors, 190 Iowa 777, 180 N.W. 721; Browneller v. Natural Gas Pipeline Co., 233 Iowa 686, 8 N.W.2d 474; 11 Am. Jur., Constitutional Law, section 111, pages 748, 749.

Nevertheless the relators herein are not left without effective relief. If, as they allege, the trial court found that proof of the facts alleged in their petition involves a public interest and justifies a suit to dissolve the defendant, co-operative, such proof submitted to the attorney general should be "reasonable cause" and call for his action in submitting the matter to the courts in the public interest. Access to the courts is, therefore, not obstructed or denied to them.

VII. We hesitate to unduly lengthen this opinion to review the many cases cited us by able counsel on each side, for none is directly in point. They announce well-established rules, but the applications are not too helpful with the problem presented. True, we did consider a similar question in the case of State ex rel. Hutt v. Anthes Force Oiler Co., supra, 237 Iowa 722, 733, 22 N.W.2d 324, 329 which was a suit in quo warranto for dissolution of a corporation brought by relator. In a dismissal sustained on the ground that the statute required the suit to be brought by the attorney general we used this language:

"We are satisfied that our holding that the suit must be instituted by the attorney general follows the rule of prior cases and expresses the intent of the general assembly in requiring a matter of such great importance to the corporate existence of

any corporation and of such public interest to be brought by the state itself through its attorney general, and not at the insistence of any private relator who may feel aggrieved at some action of the corporation so that he may, for any reason, attempt to work a dissolution."

Also see O'Connor v. Home Savings & Loan Assn., 224 Iowa 1127, 278 N.W. 636, which recognized that an exclusive method of procedure for the dissolution of a building and loan association was provided by the legislature and that it was binding on the courts.

One of the principal questions resolved in the case of State ex rel. Winterfield v. Hardin County Rural Elec. Coop., supra, 226 Iowa 896, 903, 917, 285 N.W. 219, 222, was, "Is the relator authorized under the law to maintain this action?" After reviewing the rights to establish and maintain a co-operative of the nature involved, we concluded with the statement: "The trial court held that the relator had no standing to bring this action, because of the provisions of sections 8512-g53 and 8512-g56 [now 499.53 and 499.56]. The reasons given appear sound, but we are not passing upon that question, because our other conclusions are decisive of the appeal."

It is true the constitutionality of section 499.53 was not challenged in these cases, but there appear therein rather complete discussions of the powers of a legislature to provide for the creation, maintenance, operation, and dissolution of co-operatives of the nature here involved, which we do not care to repeat herein. The following helpful rule announced in State v. Gibson, 189 Iowa 1212, 1220, 174 N.W. 34, 37, has been recognized and approved by us: "* * * the courts must do nothing to prevent or embarrass ordinary legislation. The construction is to be liberal, and not critical or technical." Thus, to adopt relators' contention that section 499.53 is unconstitutional for the reasons advanced, we think, would be highly technical and critical.

An entity created by authority of the legislature in the public interest should, in logic, be questioned only by authority of that body, and if the public interest is not thereby hindered or excluded, its designation of the party who may bring the suit, as well as its procedure, is peculiarly within that authority. As a

general rule, any reasonable distinction is acceptable when that authority is extended to challenge some entities and not others. The logical conclusion is that the legislature simply did not intend to extend the rights found in the Rules of Civil Procedure 299 to 305 to co-operatives, building and loan associations, charitable trusts, etc., but retained the right to challenge them by the State's own legal officer. We think relators have failed to overcome their burden to show the distinction was clearly, plainly and palpably arbitrary and unjust. McGuire v. Chicago, B. & Q. R. Co., supra, 131 Iowa 340, 108 N.W. 902, 33 L. R. A., N. S., 706.

There is perhaps one more case cited by defendant which we should mention. In Union Savings & Investment Co. v. District Court of Salt Lake County, 44 Utah 397, 403, 404, 140 P. 221, 223, the power of the legislature in such matters was discussed in some detail. It is a decision often cited and followed generally. It holds the remedy exclusive when given by a Utah law which provides, that when a domestic building and loan association is in the opinion of the Secretary of State conducting its affairs illegally, he shall notify the directors, and if the objections be not immediately remedied, shall advise the attorney general who shall take the necessary steps to wind up its affairs, and the courts cannot appoint a receiver to wind up the affairs of the association at the request of one or more of the shareholders. In discussing the issues involved, the court said: "It is settled law that the power to wind up the affairs of a corporation and to dissolve it is *not* one which inheres in the courts. * * * There is, therefore, much force to the contention of plaintiff's counsel that the method provided by the statute, where one is provided, to dissolve a corporation is exclusive." (Emphasis supplied.)

As to the constitutional question (pages 407, 408 of 44 Utah, page 225 of 140 P.) it said: "But it is contended that under article 1, section 11, of our Constitution the courts must always be open to all alike. It is now too well settled to require elucidation that state Constitutions are not intended as grants but merely as limitations of powers. What is said, therefore, in the section just referred to about courts having to be open to all is merely a reiteration of the pre-existing common-law right with

a limitation preventing the legislature from in any way impairing or curtailing that right. It was not intended, by adopting that and similar sections usually found in Constitutions, to change the law with respect to certain rights which are vested in the State, which alone can exercise sovereign powers. For instance, an individual may not sustain an action and assail the right of a corporation, which is a creature of the state, to continue its business, although such corporation may transcend its corporate powers or rights. Such matters are still left in the hands of the sovereign state to be dealt with as may seem best to it, and the state may not be interfered with by any dissatisfied stockholder except to arrest or prevent a wrong done or contemplated by the corporation in the courts."

The rule as stated therein (page 408 of 44 Utah, page 225 of 140 P.) is, "The right to dissolve a corporation and wind up its affairs for any cause against its consent belongs to the sovereign state alone, and in the absence of an express statute to that effect the courts have no power to bring about that result at the instance of an individual suitor."

The court had this to say as to an alleged delinquent attorney general (page 409 of 44 Utah, page 226 of 140 P.) : "Nor is the contention sound that the shareholder may suffer irreparable injury because the Attorney General, or some other state officer, may refuse to act, or may act tardily. We must presume that every officer will do his duty. Moreover, where the duty is clear and the right is equally so, the courts can, without any delay whatever, require any officer to act."

The court further expressed the opinion that the only purpose of the statute in question, which is not unlike our section 499.53, is to prevent hasty and ill-considered action in the courts by a party without giving the association any opportunity whatever to correct any wrongs, etc., and where the purpose as here is to end the very existence of the co-operative, the action should be commenced by the attorney general as the State's own legal officer.

Clearly, plaintiffs herein want nothing less than dissolution of defendant, co-operative, and believe it should never have been given legal existence. Perhaps such complaint could be made against all co-operatives under chapter 499 with as much merit.

Indeed it may be evident that co-operatives under chapter 499 are not popular as competitors, and for that very good reason the State has not permitted other than its own legal officer, the attorney general, to challenge them in the courts. Such a decision cannot be labeled by us as unjust, unfair or unwise. We also find it hard to believe that the State, unlike an individual, may not select its advocate before the court as it chooses, and when it does so without unjust or unreasonable · discrimination anyone can complain.

We have carefully examined the cases cited by relators with reference to legislative classification, which were found to be unreasonable, arbitrary and void. In Power Mfg. Co. v. Saunders, 274 U. S. 490, 494, 47 S. Ct. 678, 680, 71 L. Ed. 1165, 1168, the legislature of Arkansas provided a separate classification of foreign corporations in respect to the *venue* or *place* of bringing transitory actions. The court said : "So far as their situation has any pertinence to the venue of transitory actions it is not distinguishable from that of domestic corporations and individuals. Certainly there is no substantial difference. * * * So far as the plaintiffs in such actions are affected, it is apparent that there is no more reason for a state-wide venue when the action is against a foreign corporation than when it is against a domestic corporation or a natural person." It was concluded, therefore, that "the special classification and discriminatory treatment of foreign corporations are without reasonable basis and essentially arbitrary." We agree with that reasoning and conclusion, but do not follow the application to the case before us where there is no question of venue classification involved, but rather a reasonable explanation for the distinction.

In Frost v. Corporation Commission of Oklahoma, 278 U. S 515, 522, 49 S. Ct. 235, 238, 73 L. Ed. 483, 489, a divided court found the provisions of certain state statutes bad as establishing an arbitrary classification, when it purported to regulate cotton gins as public utilities and expressly directed that when a petition was filed for the establishment of a cotton gin to be operated upon a co-operative basis signed by 100 citizens and taxpayers of the community, "a license for said gin" shall be granted without a showing of public convenience and necessity. Therein Justice Sutherland said : "* * * the classification, in order to be

valid, 'must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' [Citing cases.]" The rule so clearly expressed is not of aid to relators here, as we have previously indicated.

The ground of the decision in the Frost case was narrow indeed, for the majority of the court said (page 523 of 278 U. S.): "As applied to corporations organized under the 1917 Act, we have no reason to doubt that the classification created by the proviso might properly be upheld", citing American Sugar Refining Co. v. Louisiana, 179 U. S. 89, 21 S. Ct. 43, 45 L. Ed. 102, and Liberty Warehouse Co. v. Burley Tobacco Growers Co-op. Marketing Assn., 276 U. S. 71, 48 S. Ct. 291, 72 L. Ed. 473. Indeed, the general rule is acknowledged that legislatures may, for certain purposes, classify co-operative associations and place them in a class of their own, and that it may apply to them different rules from those applicable to business corporations or individual citizens.

The different manners of obtaining judicial review provided by the legislature otherwise not available are not of the type usually held to be arbitrary or discriminatory. Wiegand v. Barnes Foundation, 374 Pa. 149, 97 A.2d 81; Wallace v. Pierce-Wallace Pub. Co., supra, 101 Iowa 313, 70 N.W. 216, 38 L. R. A. 122, 63 Am. St. Rep. 389; State ex rel. Saylesville Cheese Mfg. Co. v. Zimmerman, Judge, 220 Wis. 682, 265 N.W. 856; 11 Am. Jur., Constitutional Law, section 326, page 1121; Clear Lake Co-operative Live Stock Shippers' Assn. v. Weir, 200 Iowa 1293, 206 N.W. 297. It is true that in the latter case we said the distinction must be based upon something substantial, and must be based on some natural reason or distinction determined by a difference in the situation and circumstances of parties placed in different classes. Admittedly, this is sometimes a very close question, but we have no doubt in the case before us. There was indeed some doubt in Sperry & Hutchinson Co. v. Hoegh, 246 Iowa 9, 65 N.W.2d 410, where by a divided court we held certain sections of the Code void because it was determined that the classification did not have a reasonable relation to the purposes and objects of the law.

In Collins v. State Board of Social Welfare, 248 Iowa 369, 81 N.W.2d 4, we held that a proviso that limited maximum family relief denied plaintiff and her children equal protection of the law. It was apparent the discrimination between children of the same class, as defined in section 239.1(4), was arbitrary and unreasonable. The latter case dealt with grants in aid which were also entirely within the discretion of the legislature, but there the similarity of the cases disappears. Therein we said, in view of the announced purpose of the Act, the discrimination was without any justification or reason. No similar discrimination appears herein.

VIII. Our conclusions are, therefore, that section 499.53 is not unconstitutional, for the following reasons: (1) It has uniform operation on all persons. (2) There is no immunity from judicial inquiry. (3) The restriction as to who may institute the action for dissolution does not amount to an exclusive privilege, but is a reasonable designation within the legislative discretion to prevent harassment of a preferred type of entity, which, due to privileges and exemptions legally granted co-operatives, is more vulnerable to challenge under the guise of protection of the public interest. (4) It does not deny equal protection of the laws of the State, for all entities created by the State are subject to judicial review. All are subject to challenge in the courts by duly designated persons representing only the public interest.

Since we hold the suit must have been instituted and prosecuted by the attorney general and that this is not an unconstitutional requirement, it becomes unnecessary to rule upon the other questions raised by the parties in this appeal. Defendant's motion to dismiss should have been sustained.—Reversed.

All JUSTICES concur.