Taft, J.
 

 Section 2288-2, General Code, reads:
 

 “It shall be unlawful for any officer, board or commission of the state to enter into any contract, agreement or obligation involving the expenditure of mouey, or pass any resolution or order for the expenditure of money, unless the Director of Finance shall first certify that there is a balance in the appropriation pursuant to which such obligation is required to be paid, not otherwise obligated to pay precedent obligations.”
 

 
 *272
 
 In the event there is money in a state fund, available for the purpose for which it is sought, it is the ministerial duty of the Director of Finance, upon proper submission of an encumbrance estimate or certificate for the purpose of encumbering such money for such purpose, to make the certification required by Section 2288-2, General Code. The discharge of this duty may be compelled by mandamus.
 
 State, ex rel. S. Monroe & Son Co.,
 
 v.
 
 Baker, Dir.,
 
 112 Ohio St., 356, 147 N. E., 501.
 

 Admittedly, there is a balance of more than $600,000 in the highway improvement fund, not otherwise obligated to pay precedent obligations.
 

 Section 22 of Article II of the Constitution reads:
 

 “No money shall be drawn from the treasury, except in pursuance of a specific appropriation, made by law; and no appropriation shall be made for a longer period than two years.”
 

 The first questions to be considered are whether there has been a specific appropriation of money to the Department of Highways for the study of a turnpike project and for the use of engineering and other forces, including consulting engineers and traffic engineers in effecting such study, and whether the money so appropriated is in the highway improvement fund.
 

 Section 1220, General Code, reads:
 

 “With the approval and the consent of the controlling board, the Director of Highways shall expend out of any funds available for the purpose such moneys as may be necessary for the study of any turnpike project or projects and to use its engineering and other forces, including consulting engineers and traffic engineers, for the purpose of effecting such study * * *.”
 

 Amended House Bill No. 654, enacted by the 98th General Assembly, provides, so far as material:
 

 “Section 1. The sums set forth herein designated ‘total personal service,’ ‘total maintenance,’ ‘total sub
 
 *273
 
 sidies’ and ‘total additions and betterments,’ for tbe purposes therein specified, are hereby appropriated out of any moneys in the state treasury not otherwise appropriated. Appropriations for departments, * * * for the uses and purposes of which, or of any activity or function thereof, * * * specific funds in the state treasury are provided by law, are hereby made from such specific funds * * *, and to the extent that the moneys to the credit of such specific funds * '* * shall be sufficient to satisfy such appropriations * * *.
 

 “Department op Highways
 

 “Highway Improvement Fund
 

 ‘ ‘ 1949-50 1950-51 Biennium
 

 “G- Additions and
 

 Betterments—
 

 “G 32. Other
 

 Capital Outlay $18,350,000. $18,500,000.
 

 “Total Additions and Betterments $18,350,000. $18,500,000. $36,850,000.
 

 “Total Department of Highways—
 

 “Highway Improvement Fund $45,100,000.
 

 “(Appropriated from Highway Construction Fund)”
 

 Obviously, Section 1220, General Code, does not appropriate any money. However, Section 1220, General Code, was enacted prior to the time when Amended House Bill No. 654 was adopted. Amended House Bill No. 654 did appropriate to the Department of Highways for the highway improvement fund a total sum of $45,100,000. It specified that, of this amount, $18,350,000 in 1949-50 and $18,500,000 in 1950-51 was for other capital outlay for additions and betterments.
 

 Section 1204 (b), General Code, reads:
 

 
 *274
 
 “The word ‘project’ or the words ‘turnpike project’ shall mean any express highway, super-highway or motor way constructed under the provisions of this act, at such location as shall be approved by the Governor, including all bridges, tunnels, overpasses, underpasses, interchanges, entrance plazas, approaches, toll houses, service stations, and administration, storage and other buildings and facilities which the commission may deem necessary for the operation of the project, together with all property, rights easements and interests which may be acquired by the commission for the construction or . the operation of the project. Each project or turnpike project shall be separately designated by name or number and may be constructed or extended in such sections as the commission may from time to time determine.”
 

 From the foregoing definition, it would seem obvious that a capital outlay for a turnpike project is a capital outlay for additions and betterments for highway improvement.
 

 If the Director of Highways had been authorized by statute to expend money for building a turnpike project, as so defined, then it would appear clear that an act of the General Assembly, appropriating money to him for capital outlay for additions and betterments for highway improvements, would be a' specific appropriation of money which he would be authorized to use to build such turnpike project.
 

 It may be argued that Section 1220, General Code, does not authorize the Director of Highways to expend money for building a turnpike project but merely for the study of such project.
 

 Section 4 of Amended House Bill No. 654 specifically provides in part as follows:
 

 “The controlling board shall have power * *
 
 *
 
 (f) to authorize any department * * * of the state * * * to use any funds appropriated in this act to such de
 
 *275
 
 partment * * * for the preparation of preliminary plans for construction of * * * improvements.”
 

 If there was any doubt whether the words, capital outlay for additions and betterments for highway improvement, might include a study of a highway improvement such as contemplated by Section 1220, General Code, such doubt would seem to be eliminated by the foregoing quoted provisions from Section 4.
 

 In our opinion, therefore, Amended House Bill No. 654 has made a specific appropriation of money which is available for study of a turnpike project, as contemplated by Section 1220, General Code.
 

 Where the director of a department is authorized by law to spend money for certain additions and betterments, then an appropriation to his department for additions and betterments without specifying any particular additions or betterments, will constitute a specific appropriation of money for those additions and betterments which he was authorized by law to make. Of course, general statutes may authorize such director to make other additions and betterments so that the money appropriated for additions and betterments may be insufficient to enable him to provide all those which general statutes authorize him to provide. In such an instance, the director would, in the absence of any statutory provision to the contrary, necessarily have an administrative discretion to determine which additions and betterments he would provide with the money available.
 

 In the instant case, the appropriation was not made by Section 1220, General Code, but was made by Amended House Bill No. 654. As required by Section 22 of Article II of the Constitution, section 3 of that bill specifically limits the period, for which the appropriation is made, to two years.
 

 Our attention has been called to
 
 New Jersey Turnpike Authority
 
 v.
 
 Parsons, Atty. Genl.,
 
 69 A. (2d),
 
 *276
 
 875, decided by the Supreme Court of New Jersey on December 5, 1949. That case held a statute substantially similar to Section 1220, General Code, invalid because contrary to a constitutional provision substantially similar to Section 22 of Article II of the Ohio Constitution.
 

 It does not appear, from the report of that case, just what appropriations had been made to the New Jersey highway department. The opinion of the New Jersey court points out that no appropriation was made to the turnpike authority and then states that the services to be rendered by the highway department were “for a project * * * not within the scope of the duties confided to” the highway department. In our opinion, this latter statement disregards the provisions of the New Jersey statute, corresponding to Section 1220, General Code, which authorizes the New Jersey highway department to render those services.
 

 On this question, our conclusion is that there has been a specific appropriation under which money may be drawn from the treasury by the Director of Highways for the purpose of making the study of a turnpike project, as provided for in Section 1220, General Code; and that money so appropriated is in the highway improvement fund.
 

 The next question to be considered is whether the General Assembly had power to appropriate moneys for such a purpose by reason of the provisions of Sections 5 and 5a of Article XII of the Constitution. These sections read:
 

 “Section 5. No tax shall be levied, except in pursuance of law; and every law imposing a tax, shall state, distinctly, the object of the same, to which only, it shall be applied.
 

 “Section 5a. No moneys derived from fees, excises, or license taxes relating to registration, operation, or use of vehicles on public highways, or to fuels used for
 
 *277
 
 propelling such vehicles, shall be expended for other than costs of administering snch laws, statutory refunds and adjustments provided therein, payment of highway obligations, costs for construction, reconstruction, maintenance and repair of public highways and bridges and other statutory highway purposes, expense of state enforcement of traffic laws, and expenditures authorized for hospitalization of indigent persons injured in motor vehicle accidents on the public highways.”
 

 The portions of Amended House Bill No. 654 hereinbefore quoted disclose that the highway improvement fund, sought to be encumbered by relator in the instant case, consists of moneys appropriated from the highway construction fund. The principal source of moneys in the highway construction fund is the gasoline tax levied by Section 5541, General Code. That section provides in part:
 

 “For the purpose of providing revenue for supplying the state’s share of the cost of constructing, widening and reconstructing the state highways of this state * * * an excise tax is hereby imposed * *
 

 In our opinion, moneys to be expended for the study of a turnpike project, pursuant to Section 1220, Gen-real Code, come within the definition of “the state’s share of the cost of constructing
 
 * * m
 
 the state highways of this state, ” within the meaning of those words, as found in Section 5541, General Code; and moneys so used would he used for the stated object of the tax imposed by Section 5541, General Code.
 

 We are further of the opinion that moneys so expended would be “expended for * * * costs for construction * * * of public highways and bridges and other statutory highway purposes,” within the meaning of Section
 
 5a,
 
 Article XII of the Constitution.
 

 The next question is whether, by conferring upon the Director of Highways authority to expend funds
 
 *278
 
 for the study of a turnpike project with the approval and consent of the controlling board (Section 1220, General Code), the General Assembly delegated legislative powers either to the Director of Highways or to the controlling board.
 

 In
 
 New Jersey Turnpike Authority
 
 v.
 
 Parsons, Atty. Genl., supra,
 
 the Supreme Court of New Jersey held that the New Jersey statute, substantially similar to Section 1220, General Code (except that it did not confer authority upon a controlling board), was invalid as a delegation of legislative power to the highway commissioner. On this question, the opinion of the New Jersey court states merely that “the delegation to the discretion of the state highway commissioner of how much of his funds shall be turned over to an autonomous public corporation” cannot “be justified.” Apparently, what the New Jersey court had in mind was that authority to construct the turnpike •had been conferred on what corresponds to our turnpike commission and discretionary authority to help in planning that construction could not, therefore, be conferred on the highway commissioner. This amounts to saying that, in the construction of a project, the state legislature cannot authorize one agency to construct it and authorize another agency at its discretion to help in planning it, even when such help is to be given only on request of the first agency. In our opinion, the General Assembly does have power to do that.
 

 It should be observed that, under Section 1220, General Code, the relator is only authorized, with approval and consent of the controlling board, to expend “such moneys as may be necessary” for study of a turnpike project.
 

 The fact, that the General Assembly may authorize a public officer to expend moneys for public purposes and appropriate a smaller amount than neces
 
 *279
 
 sary to accomplish all those purposes, necessarily requires such officer to exercise his administrative discretion in determining the purposes for which he will use the money so appropriated. If the General Assembly has not specified that he must use what funds he has for some of those purposes before using them for others, the determination by the officer to use those- funds for some but not all those purposes does not constitute an exercise of legislative power. On the contrary, such a determination constitutes an exercise of administrative power. In effect, the officer is simply determining how much of the authority and power granted to him by the General Assembly he will use. See
 
 Cincinnati, W & Z. Rd. Co.
 
 v.
 
 Commrs. of Clinton County,
 
 1 Ohio St., 77, 89, 90.
 

 The requirement of approval and consent of the controlling board, in effect, places a limit on the administrative power which the General Assembly has conferred upon the Director of Highways. In giving its approval and consent, the controlling board is exercising administrative and not legislative power. In effect, instead of having conferred the administrative power to determine whether to expend available moneys for the study of a turnpike project on the Director of Highways alone, the General Assembly has conferred that administrative power on the director and the controlling board acting together. See
 
 State, ex rel. McCaw, Chief,
 
 v.
 
 Ferguson, Aud.,
 
 139 Ohio St., 1, 38 N. E. (2d), 68;
 
 Sims
 
 v.
 
 Brooklyn Street Rd. Co.,
 
 37 Ohio St., 556. It may be observed that Section 1220, General Code, also indicates by its words that the expenditures to be made by the relator are to be “ with the approval of the commission.”
 

 Under the provisions of Section 1220, General Code, it is contemplated that the Department of Highways shall secure the approval of the commission for the expenditure of the funds involved in the instant case.
 
 *280
 
 It is argued that this approval cannot be secured because (1) the turnpike commission would be a corporation, and (2) by reason of Section 1 of Article XIII, the General Assembly has no power to create such a corporation. That section reads:
 

 “The General Assembly shall pass no special act conferring corporate powers.”
 

 It is contended that this constitutional provision does not distinguish between the granting of public and the granting of private corporate power. In support of this contention, reference is made to the following decisions of this court with regard to municipal corporations:
 
 State, ex rel. Atty. Genl.,
 
 v.
 
 City of Cincinnati,
 
 23 Ohio St., 445;
 
 Platt, a Taxpayer,
 
 v.
 
 Craig,
 
 66 Ohio St., 75, 63 N. E., 594;
 
 City of Cincinnati
 
 v.
 
 Trustees of Cincinnati Hospital,
 
 66 Ohio St., 440, 64 N. E., 420;
 
 State, ex rel. Knisely,
 
 v.
 
 Jones,
 
 66 Ohio St., 453, 64 N. E., 424.
 

 Even a casual reading of the foregoing constitutional provision discloses that it is to apply only where corporate powers are conferred by
 
 ‘ ‘
 
 special act. ’ ’ See
 
 Kumler
 
 v.
 
 Silsbee,
 
 38 Ohio St., 445, 447. This is recognized in each of the foregoing cases relied upon by the Director of Finance.
 

 There was a definite reason for this constitutional provision. It was the desire of the people to have all acts, conferring corporate powers, affect or be likely to affect the interests of the constituents of each and every individual member of the General Assembly, so that bis interest in bis constituents would call bis attention to the effect of the proposed enactments upon them, as well as upon the people of other localities.
 
 State, ex rel. Atty. Genl.,
 
 v.
 
 City of Cincinnati,
 
 20 Ohio St., 18, 35;
 
 City of Cincinnati
 
 v.
 
 Trustees of Cincinnati Hospital, supra,
 
 448 and 449;
 
 State, ex rel. Knisley,
 
 v.
 
 Jones, supra,
 
 489.
 

 Thus, in speaking of Section 1 of Article XIII and
 
 *281
 
 Section 26 of Article II, it was said in the opinion by Shauck, J., in
 
 City of Cincinnati
 
 v.
 
 Trustees of Cincinnati Hospital, supra,
 
 at page 448:
 

 “They were in their combined effect admirably adapted to cure the legislative evils which resulted from the enactment of many laws which challenged the interest of a single representative, or representatives of a single county, but secured the votes of a majority in consideration of a return of the supposed favor.”
 

 It was stated by the same jurist in the opinion in
 
 State, ex rel. Knisley,
 
 v.
 
 Jones, supra,
 
 that these sections were “to relieve the people of the evils of special legislation, legislation which was enacted by the votes of representatives who were indifferent to the subject, because the legislation did not affect their constituencies.” See, also,
 
 Atkinson
 
 v.
 
 Marietta & C. Rd. Co.,
 
 15 Ohio St., 21, 35.
 

 Within the meaning of Section 1 of Article XIII of the Constitution, a special act, as opposed to an act of a general nature, is one that is local and temporary in its operation.
 
 Platt
 
 v.
 
 Craig, supra,
 
 78. See
 
 State, ex rel.,
 
 v.
 
 Hoffman, Aud.,
 
 35 Ohio St., 435, 443.
 

 The turnpike act is obviously not temporary in its operation or of a temporary nature or character. There is no provision in the act to indicate that it is not to be effective as a part of the law of this state indefinitely — that is, until the General Assembly shall repeal it. While, after bonds issued to finance a particular “turnpike project” have been paid in full, that turnpike project will become a part of the state highway system, there is nothing in the act to indicate that the commission may not undertake more than one turnpike project. In fact, the provisions of the act clearly provide otherwise.
 

 There is nothing in the turnpike act to indicate that it shall be local in its operation. Nothing in the act requires the commission to undertake, or prevents it
 
 *282
 
 from undertaking, projects in any particular locality of the state. The powers of the commission and the provisions of this act were such that they should have, and undoubtedly did challenge the interest of every member of the General Assembly, so that it can fairly be said that the passage of the act represented actual approval of its provisions on behalf of their constituents by a majority of the members of each branch of the General Assembly. It certainly cannot be said, therefore, that the turnpike act is one of a local nature.
 

 In our opinion the turnpike act is not a special act, within the meaning of Section 1 of Article XIII of the Constitution. It follows that, even if the turnpike act does confer corporate powers, which we do not decide, it does not conflict with the prohibitions of Section 1 of Article XIII of the Constitution.
 

 The next question raised is whether Section 1220, General Code, contravenes the part of the provisions of Section 4 of Article VIII of the Constitution reading: .
 

 “The credit of the state shall not, in any manner, be given or loaned to, or in aid of, any individual association or corporation whatever.”
 

 In the quoted portion of the foregoing section, the words “individual association or corporation” are significant. This court has held that, while that portion of the section forbids the giving or loaning of the state’s credit to or in aid of a private business enterprise, it does not prohibit such gift or loan to a public organization created for a public purpose.
 
 State, ex rel Leaverton,
 
 v.
 
 Kerns, Aud.,
 
 104 Ohio St., 550, 136 N. E., 217. In the instant case, whether it is a corporation or not, the turnpike commission is certainly a public organization created for a public purpose. See
 
 Cincinnati, W. & Z. Rd. Co.
 
 v.
 
 Commrs. of Clinton County, supra.
 

 It follows, therefore, that the advancement of funds
 
 *283
 
 on behalf of the commission by the highway department does not constitute a gift or loan of the credit of the state prohibited by this portion of Section 4 of Article VIII of the Constitution.
 

 Many other questions have been raised in support of the contention that the writ of mandamus should not be allowed in the instant case. It has been argued that it is not necessary to answer any of those other questions at this time in order to determine that respondents have the clear legal duty to act which must exist before the writ sought will be allowed. These other questions do not relate directly to Section 1220, General Code, but do relate to other portions of the turnpike act.
 

 Ordinarily, where a proceeding directly involves only one section of an act, it is not necessary to consider questions raised as to the constitutionality of other provisions of the act not directly involved in the proceeding. Where, however, it appears improbable and unreasonable that the General Assembly would have enacted the section directly involved if the General Assembly knew that those other provisions of the act were unconstitutional, it is necessary, if the question is raised, to consider the constitutionality of those other provisions in order to determine the validity of the particular section so involved.
 
 State, ex rel. Huston,
 
 v.
 
 Commrs. of Perry County,
 
 5 Ohio St., 497;
 
 State
 
 v.
 
 Pugh,
 
 43 Ohio St., 98, 1 N. E., 439;
 
 State
 
 v.
 
 Sinks,
 
 42 Ohio St., 345;
 
 State, ex rel. Atty. Genl.,
 
 v.
 
 Kinney, Secy. of State,
 
 56 Ohio St., 721, 47 N. E., 569. See, also, 8 Ohio Jurisprudence, 200, Section 98.
 

 In my opinion, if other provisions of the turnpike act are invalid, to such an extent that no turnpike project could be built thereunder, then it would appear to be improbable and unreasonable that the General Assembly would have enacted Section 1220, General Code, authorizing the study of such a turnpike project.
 

 
 *284
 
 However, a majority of the court is of the opinion that it is not necessary to answer, at this time, any of those other questions raised in support of the contention that the writ of mandamus should not be allowed in the instant case.
 

 I do not believe, therefore, that any useful purpose will be served by considering in this opinion the other questions which I believe must be decided in order to sustain the judgment in the instant case. Some of those questions will undoubtedly be presented for decision in subsequent litigation before this court.
 

 Writ allowed.
 

 Hart, Zimmerman and Stewart, JJ., concur.
 

 Weygandt, C. J., concurs in paragraphs one to eight, inclusive, of the syllabus and in the judgment.
 

 Matthias and Turner, JJ., dissent.