BULOVA WATCH COMPANY, INC., appellant, v. ROBINSON WHOLESALE COMPANY et al., appellees.

No. 50263.

(Reported in 108 N.W.2d 365)

April 4, 1961.

Holliday, Miller & Stewart, by William Wimer and Joseph B. Joyce, of Des Moines, for appellant.

Lappen & Kramer, of Des Moines, for appellees.

SNELL, J.—This is an appeal from a decision by Polk District Court holding unconstitutional the nonsigner provisions of the Iowa Fair Trade Act, chapter 550, Code, 1958.

We have before us the record, duly settled in the trial court, and appellant's brief and argument. We have not been favored by any brief or argument, written or oral, by appellees. We mention this only in explanation of our difficulty and intend no reflection upon counsel for appellees as we are advised they have refrained from further defense of the case on instructions from their clients.

Without knowing the reasons for this lack of interest, it would be improper for us to assume it is solely because of loss of confidence in their position as sustained by the trial court.

Plaintiff, Bulova Watch Company, Incorporated, a New York corporation not qualified or authorized to transact business in Iowa, brought this action under the provisions of chapter 550, Code, 1958, commonly called the Iowa Fair Trade Act, to restrain defendants from advertising for sale or selling plaintiff's products at prices less than those stipulated in contracts entered into under the Act.

The commodities involved bear the label, trade-mark, brand and name of plaintiff. It is producer and owner of such commodities and products and all are in fair and open competition with products and commodities of the same general class pro-

duced by others. In the main, they are men's and ladies' watches.

Subsequent to enactment of the Iowa Fair Trade Act, but prior to the acts complained of herein, plaintiff had entered into agreements with other retailers in Iowa providing that said retailers would not, within the State, advertise, offer for sale, sell or resell any such commodities of plaintiff at less than the prices set forth in its retail price list.

There are no fair-trade contracts between plaintiff and defendants or between plaintiff and defendants' suppliers.

Bulova watches have been sold by defendants for less than the fair-trade price established by plaintiff. Defendants admit the volume of such sales totaled $35,000 to $40,000. These watches were obtained from distributors and not by direct purchase from plaintiff.

Frequent violation of the fair-trade price schedule of plaintiff by retailers other than defendants was shown by the purchase of sixteen Bulova watches at less than the established price between the commencement of this action and final submission in district court.

The trial court dismissed the action against one of the original defendants and in this appeal plaintiff-appellant objects thereto, but we do not deem this very important as to the ultimate issue.

■ The trial court held the provisions of the Iowa statute unconstitutional as to nonsigners of fair-trade agreements and dismissed the action.

We agree with the trial court.

The pertinent parts of the statutes with which we are concerned are as follows:

"550.1 Contracts as to selling price. No contract relating to the sale or resale of a commodity which bears, or the label or content of which bears, the trade-mark, brand, or name of the producer or owner of such commodity and which is in fair and open competition with commodities of the same general class produced by others shall be deemed in violation of any law of the state of Iowa by reason of any of the following provisions which may be contained in such contract:

"1. That the buyer will not resell such commodity except at the price stipulated by the vendor.

"2. That the vendee or producer require in delivery to whom he may resell such commodity to agree that he will not, in turn, resell except at the price stipulated by such vendor or by such vendee.

"550.3 Actions for damages. Willfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of sections 550.1 and 550.2, *whether the person so advertising, offering for sale or selling is or is not a party to such contract,* is unfair competition and is actionable at the suit of any person damaged thereby." (Emphasis supplied.)

Our Fair Trade Act, in essence, in section 1, legalizes as to both vendees and subvendees, resale price maintenance contracts for any commodity which bears the trade-mark, brand or name of the producer or owner of the commodity and which is in fair and open competition with commodities of the same general class produced by others; and in section 3 creates a statutory tort of unfair competition in knowingly and willingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of section 1, *whether the person advertising or selling is or is not a party to such contract.* With respect to resale price maintenance by contract, the Fair Trade Act not only affirms the Iowa judicial tolerance of binding immediate vendees but also goes beyond all common-law development in this state to extend enforceability to contracts binding subvendees as well.

The validity of nonsigner provisions under Fair Trade Acts has been upheld by the Supreme Court of the United States. Probably the leading case is Old Dearborn Distributing Co. v. Seagram-Distillers Corp., 299 U. S. 183, 57 S. Ct. 139, 81 L. Ed. 109, 106 A. L. R. 1476. It was held the acquisition of a trade-marked article with full knowledge of contractual price restriction imposed by the producer constitutes the buyer's assent to the protective price restriction even though the buyer was not a party to the contract containing the restriction.

An annotation in 60 A. L. R.2d on page 423 says: "Sum-

marization of the law regarding the validity, as a matter of state constitutional law, of 'nonsigner' provisions, must be prefaced with the caveat that decisions in various jurisdictions are not merely opposed in result, but are completely irreconcilable. On virtually every conceivable state constitutional question, there is strong authority on both sides. It may be of value to note that with the disappearance of the depressed economic conditions out of which the fair trade statutes arose, there has been a growing tendency to find state constitutional defects in the nonsigner provisions."

In a great number of jurisdictions in which nonsigner provisions have been tested against state constitutional guarantees, the nonsigner provisions have been upheld. What some writers call the minority view holds the nonsigner provisions are in fatal conflict with state constitutional guarantees. In some instances the attack was sustained on a basis not involved in the case at bar.

Some courts point out the restriction as to the resale price of commodities within the scope of the statute is not, under the terms of the statute, imposed after the acquisition of the commodity, and thus is not in derogation of an existing or established right. These courts hold that the restriction is a condition that is attached to property prior to its purchase, is known to the prospective purchaser and so is binding on the purchaser.

Among the cases holding fair-trade statutes unconstitutional it is argued that for such a law to be upheld it is indispensable there be some semblance of a public necessity for it, and it must have some relation to public health, morals, safety or welfare.

The Indiana court said it was beyond the power of the legislature to make it possible for private parties, by contract, to make a law binding upon everyone who retailed the goods manufactured by one of the private parties. As to the contention that the Fair Trade Act did no more than give an additional property right in a trade-mark, the court said if this is to be done it must be accomplished pursuant to the Constitution, and the state legislature had no right to delegate its legislative power to private persons, and could not even

delegate to a governmental agency the power to find what might be a reasonable price without proper safeguards and procedural due process. Bissell Carpet Sweeper Co. v. Shane Co., 237 Ind. 188, 143 N.E.2d 415.

An article in Volume XIII, Iowa Law Review, on pages 324, 325, published in 1928, comments that "Both the earlier state and federal decisions sanctioned price maintenance as a right incident to production, and held that restrictive agreements were valid as long as they did not contravene public policy. Such decisions were undoubtedly the result of the doctrine of laissez faire and the governmental policy of non-interference in business during the period of our economic development known as the era of 'infant industries.' With the development of 'big business' however, people came to look to government as a protecting agency * * *." Continuing, the article says "the problem of resale price fixing is largely one for the economist, and the character of the decisions seems dependent on the adoption of the manufacturer's or the public's point of view. * * *

"The argument has been raised that a manufacturer of goods under patent right is granted a limited monopoly and that incident to the full exercise of this right was the right to contract with retailers and maintain such prices as the holder of the patent might determine. For a while the courts accepted this view, but it was later held that any protection afforded by the patent laws existed only so long as the title to the goods remained in the patentee. Finally the court declared that the fact that the goods were patented was immaterial * * *."

A symposium on the Law of Unfair Competition in Volume XXI, No. 2, Iowa Law Review, page 175, begins with these words: "There is probably no term in law or economics which is more difficult to define than 'unfair competition.' The phrase is obviously more of an epithet than a word of art. Its legal usage embodies a conclusion rather than the means of determining the legality of business behavior. * * * Businessmen, economists, courts, legislatures, and administrative agencies have arduously striven to chart the boundaries of this unruly concept,

to give it some definite content without destroying the elasticity which is its chief virtue."

The Fair Trade Acts have been so thoroughly considered in so many jurisdictions, and so completely analyzed by text writers, that no purpose would be served by exhaustive re-analysis by us.

The Iowa cases so far decided under our Fair Trade Act have not involved the nonsigner provision now before us. To the extent the Act has been considered, it has been upheld.

With no possibility of reconciling the authorities from the several jurisdictions and with no direct authority in our state, our problem is to determine which philosophy is more persuasive under our law and in the light of the more recent pronouncements.

Certain basic considerations must be kept in mind, but they are so well settled that extensive citation of authority is not necessary.

All presumptions are in favor of the constitutionality of a statute and it will not be held invalid unless such decision is required. Miller v. Schuster, 227 Iowa 1005, 289 N.W. 702.

The General Assembly has power to enact any kind of legislation it sees fit, provided it is not prohibited by some provision of the State or Federal Constitution. Carlton v. Grimes, 237 Iowa 912, 23 N.W.2d 883.

It is not our province to pass upon the policy, wisdom, advisability or justice of a statute. The remedy for unwise or oppressive legislation within constitutional bounds is not to be found in the courts but by appeal to the legislature. Merchants Supply Co. v. Iowa Employment Security Commission, 235 Iowa 372, 16 N.W.2d 572.

One who challenges the constitutionality of an Act must point out the manner or respect in which it violates the Constitution. Dickinson v. Porter, 240 Iowa 393, 399, 35 N.W.2d 66, 71. Herein lies one of our difficulties as we have not been favored with a brief supporting the defendant-appellees' position. However, the issue was before the trial court and is now before us.

A purely fact-finding authority may be vested in a

nonlegislative body, but a discretionary power involving matters of policy is legislative in nature and may not be delegated.

In Goodlove v. Logan, 217 Iowa 98, 251 N.W. 39, the question was whether the legislature could confer upon the highway commission the power and authority to establish rules regarding the stopping of vehicles on the paved portion of a highway. The court was confronted with the problem of distinguishing between administrative and legislative power, and it was held the power to adopt such rules as have the force and effect of law could not be delegated.

In State v. Van Trump, 224 Iowa 504, 275 N.W. 569, the defendant was charged with unlawful possession of catfish in "violation of the provisions of rules and regulations" of the conservation commission. It was held the authority to make such rules and regulations was in the legislature and could not be delegated to the commission.

In State ex rel. Klise v. Town of Riverdale, 244 Iowa 423, 57 N.W.2d 63, it was held the legislature could not delegate to the courts discretionary power in fixing municipal boundaries.

When we hold it is an unconstitutional delegation of legislative authority to permit the highway commission to establish rules governing the stopping of vehicles upon a highway, to permit the conservation commission to determine how many fish a fisherman may catch and for a court to fix the boundaries of a city, it is an obvious non sequitur to permit a manufacturer to regulate the sales policy of a retailer not privy to any contract or agreement with the manufacturer.

A recent pronouncement by the Supreme Court of Minnesota considering a statute almost identical with ours was relied upon by the trial court. We, too, think it most persuasive.

In Remington Arms Co., Inc., v. G.E.M. of St. Louis, Inc., 257 Minn. 562, 571, 102 N.W.2d 528, 534, decided on April 8, 1960, it is said: "In examining the grant of authority to the trade-mark owner it must be conceded that he is given the privilege to place the law in effect and to amend or alter it at his will. He may do this without regard to the interest or welfare of nonsigners or the consumer who represents the public. The law does not provide for any standard or condition as to the necessity for the act. It gives to the trade-mark owner

carte blanche authority to make that determination alone. He is not required to consult with anyone. There is no one to review his act." Continuing on pages 571, 572 of 257 Minn., page 535 of 102 N.W.2d, it is said:

"If we realistically appraise the act for what it is, it should be recognized as a selective price control act which leaves to the manufacturers of trade-mark products the arbitrary right to determine if and when it shall take effect. No standard or yardstick is provided by which such prices are to be determined. It grants to a private party the privilege of creating a right of action for its own benefit or suspending that right at its will. No hearing is provided for to safeguard or protect the unwilling retailer or the consumer.

"Thus by virtue of the nonsigner clause the private party in effect may regulate prices as it sees fit. Since one manufacturer and one retailer may fix prices for all retailers, they have the complete power to fix prices regardless of anyone's interest but their own. Those authorities which hold that this is not an unlawful delegation to private parties seem to us to be unsound." We agree.

It is our conclusion the nonsigner provisions of section 550.3, Code of 1958, constitute an unconstitutional delegation of authority, and that we are without power to implement the provisions thereof by judicial decree.

The decision of the trial court is affirmed.—Affirmed.

All JUSTICES concur except BLISS, J., who takes no part.