**Adolph B. FROST, Appellant,**

v.

**The STATE of Iowa; the Iowa State Highway Commission; and Harry J. Bradley, Jr.; Derby D. Thompson; Robert C. Barry; John R. Hansen; Koert Voorhees, Commissioners; and J. R. Coupal, Jr., Director of Highways, Appellees.**

No. 53715.

Supreme Court of Iowa.

Nov. 12, 1969.
Supplemental Opinion on Denial of
Rehearing Jan. 19, 1970.

J. W. Conway, Muscatine, for appellant.

Richard C. Turner, Atty. Gen., and Henry L. Holst, Special Asst. Atty. Gen., for appellees.

LeGRAND, Justice.

This is an equity action brought by a taxpayer to challenge the constitutionality of chapter 255, Laws of the Sixty-second General Assembly, which appears as chapter 313A, Iowa Code Annotated. He also attacks the validity of certain proceedings under that chapter and seeks to enjoin the

defendants from further action under its authority.

The act, commonly called the Interstate Bridge Act, authorizes the state highway commission to "acquire, purchase and construct interstate bridges, approaches thereto and sites therefor, to reconstruct, complete, improve, repair, remodel, control, maintain, and operate interstate bridges, to establish tolls and charges for the use of interstate bridges, to borrow money and issue bonds payable solely from the revenues derived from the operation of interstate bridges, and to refund bonds payable from such revenues."

This controversy concerns a proposed bridge across the Mississippi River at Muscatine, connecting Iowa highway 92 with its Illinois counterpart. It would replace a present span owned and operated by the Muscatine Bridge Commission and would, when all indebtedness is retired, become part of the primary highway system of the state.

For convenience we refer to the Iowa State Highway Commission (or the commission) as though it were the only defendant.

Plaintiff asserts 31 propositions for reversal, which are divided into three groups: (1) constitutional objections; (2) public policy considerations; and (3) alleged statutory and procedural violations. Some of these are not seriously urged, and others are submitted with neither argument nor citation of authority. We have considered all issues raised, although some are not treated separately in our discussion.

The case was tried upon the following stipulated facts: The present bridge at Muscatine was built in 1896. It is antiquated and unsuitable for present-day traffic. In 1956, part of one span collapsed. The bridge is now limited to vehicles of a certain type and weight. Since 1957 the bridge, a narrow 16-foot-9-inch structure, has been operated by the Muscatine Bridge Commission. It is debt free.

In 1965 it was necessary to close the bridge for safety reasons during the high water period. Since February 1, 1968, it has been limited to 8-ton vehicles upon the recommendation of safety engineers. The next nearest bridge crossing the river is at Davenport, some 25 miles away. Approximately 35 percent of all retail business in Muscatine comes from Illinois residents, and the city's economy is directly related to the existence of a bridge suitable for vehicular traffic.

Sometime in 1967, after the enactment of what is now chapter 313A, Iowa Code Annotated, the highway commission authorized an engineering study and feasibility report to discover the best location, the probable revenue and the potential traffic of a proposed new bridge across the Mississippi River at Muscatine. Based on the results of that study, the highway commission later adopted a resolution approving a new bridge to replace the present one and proposing to issue $3,160,000.00 of revenue bonds to be paid out of tolls collected from the use of the bridge.

Plaintiff raises eight separate objections to the constitutionality of chapter 313A. In considering the question of constitutionality, we indulge every reasonable inference in support of the legislation; the one challenging constitutionality has the burden to overcome this presumption and to negative every reasonable basis which may sustain the statute; a law will be declared void only when it clearly violates the constitution; and a statute must be construed so as to make it valid if there is any reasonable ground for doing so. We recite only a few of the many decisions to this effect. Knorr v. Beardsley, 240 Iowa 828, 839, 840, 38 N.W.2d 236, 243, and citations; Iowa Hotel Assn. v. State Board of Regents, 253 Iowa 870, 114 N.W.2d 539, 543; Graham v. Worthington, 259 Iowa 845, 850, 851, 146 N.W.2d 626, 630; Lee Enterprises, Inc. v. Iowa State Tax Commission, Iowa, 162 N.W.2d 730, 738, 739.

I. Plaintiff contends the act violates Article I, section 9, Constitution of Iowa, and Amendment 14, Constitution of the United States, because it takes his property without due process of law. This claim is

apparently based on the fact plaintiff pays gasoline and motor vehicle taxes which go into a fund, part of which might be used for the construction of this bridge. We have held there is no taking of property by the levy of a tax for a public purpose. Nor is due process involved. We cite only two of the decisions to that effect. Mc-Leland v. Marshall County, 199 Iowa 1232, 1243, 201 N.W. 401, 405, 203 N.W. 1. There we said, "Party is not deprived of property without due process by enforced collection of taxes merely because, in individual cases, [it] works hardships or imposes unequal burdens."

■ More recently in Graham v. Worthington, 259 Iowa 845, 858, 146 N.W.2d 626, 639, we again held that the levy and collection of taxes for a public purpose does not constitute a taking of property and does not pose a due process problem under the constitution.

■ We might add, although it seems unnecessary, that the construction of highways, including bridges, qualifies as a public purpose under this rule. Section 4.1(5), Code of Iowa; Rhodes v. Iowa State Highway Commission, 250 Iowa 416, 419, 94 N.W.2d 97, 99; Batcheller v. Iowa State Highway Commission, 251 Iowa 364, 368, 101 N.W.2d 30, 33. We hold against plaintiff on this point.

■ II. Plaintiff claims there was an unconstitutional delegation of legislative power to the highway commission by the legislature, in violation of Article III, section 1, Constitution of Iowa. However, plaintiff does not point out the particular portion of the chapter to which he refers, and we do not know which part of the act is claimed to transcend this constitutional provision. Perhaps we should therefore disregard the claim entirely, since a party asserting unconstitutionality must point out the violation with particularity. Buda v. Fulton, Iowa, 157 N.W.2d 336, 341; Lee Enterprises, Inc. v. Iowa State Tax Commission, Iowa, 162 N.W.2d 730, 740.

■ Nevertheless we have considered plaintiff's complaint and find it to be without merit. The powers of the highway commission are admittedly broad and plenary, but the delegation of such authority has been held both necessary and proper. We find nothing in chapter 313A, Iowa Code Annotated, which exceeds the exercise of prerogatives which have already been approved on numerous occasions. See discussion in Porter v. Iowa State Highway Commission, 241 Iowa 1208, 1217, 44 N.W.2d 682, 687; Harvey v. Iowa State Highway Commission, 256 Iowa 1229, 1231, 130 N.W.2d 725, 727, and A and S, Inc. v. Iowa State Highway Commission, 253 Iowa 1377, 1384, 116 N.W.2d 496, 503.

III. Plaintiff next asserts the law violates Article III, section 24, of our constitution as authorizing an illegal expenditure of state funds without a legislative appropriation. The section provides, "No money shall be drawn from the treasury but in consequence of appropriations made by law."

Plaintiff argues sections 313A.11 and 313A.12 of the law, which permit the use of primary road funds for certain purposes, violate this provision. No authority is cited in support of this claim.

■ Actually the primary road fund is established by specific legislative enactment; it is a standing appropriation which has been held to meet the constitutional requirements of Article III, section 24. Opinion of the Attorney General to the State Comptroller, January 9, 1968; Graham v. Worthington, 259 Iowa 845, 862, 146 N.W.2d 626, 637, 638, and citations. See also discussion of the character of such funds in State of Iowa ex rel. Fletcher v. Executive Council, 207 Iowa 923, 935, 223 N.W. 737, 742. There is no merit in plaintiff's contention.

IV. Plaintiff next claims the act is unconstitutional because it violates provisions of Article III, section 29, of the constitution which provides as follows: "Every act

shall embrace but one subject, and matters properly connected therewith; which subject shall be expressed in the title. * * *"

The title to the act has already been set out. The chapter generally deals with the acquisition, purchase, construction, and financing of interstate bridges. The title with some particularity sets out what the act embraces. We find no constitutional violation here, especially in view of our holdings that this section is to be liberally construed rather than to be interpreted, in a narrow, technical or critical manner. Green v. City of Mt. Pleasant, 356 Iowa 1184, 1198, 131 N.W.2d 5, 15; Long v. Board of Sup'rs of Benton County, 258 Iowa 1278, 1283, 142 N.W.2d 378, 381; Lee Enterprises, Inc. et al. v. Iowa State Tax Commission at al. Iowa, 162 N. W.2d 730, 737, and citations.

There is no constitutional violation here.

V. Plaintiff objects to the Interstate Bridge Act as a violation of Article III, section 30, of our constitution, which provides:

"The General Assembly shall not pass local or special laws in the following cases:

"For the assessment and collection of taxes for State, County, or road purposes;

"For laying out, opening, and working roads or highways;

> * * * * * *
> * * * * * *

"For vacating road, town plats, streets, alleys, or public squares;

> * * * * * *

"In all the cases above enumerated * * * all laws shall be general, and of uniform operation throughout the State * * *."

No authority is cited by plaintiff except an attorney general's opinion which does not support his charge.

The act is necessarily one of very limited application. It can be called on only when a bridge between Iowa and a sister state is contemplated; but within that selective classification, it operates without distinction or discrimination. The constitution requires nothing more. Loftus v. Department of Agriculture, 211 Iowa 566, 582, 232 N.W. 412, 420; Vilas v. Iowa State Board of Assessment and Review, 223 Iowa 604, 613, 273 N.W. 338, 342, 343 and citations.

Although dealing specifically with Article I, section 6, the comments in Green v. City of Mt. Pleasant, 256 Iowa 1184, 1199, 131 N.W.2d 5, 15, and authorities there cited, support this view. See also discussion in Graham v. Worthington, supra, at pages 863–864 of 259 Iowa Reports, 626 of N.W. 2d.

VI. The remaining constitutional question is the most troublesome: It presents the claim that chapter 313A permits the state to incur indebtedness in violation of Article VII of the constitution.

We take it there would be no objection if construction costs and maintenance expenses were limited entirely to payment from bridge toll revenues. Both section 313A.33 and the bond resolution adopted by the commission specifically provide the *bonds* shall be paid out of bridge revenue only and shall in no event become a charge against the state. Such self-liquidating ventures have had general approval both here and elsewhere. See Iowa Hotel Association v. State Board of Regents, 253 Iowa 870, 114 N.W.2d 539, and Brack v. Mossman, Iowa, 170 N.W.2d 416, filed September 5, 1969.

However, plaintiff denies the self-liquidating rule is here applicable because of sections 7 and 12 of chapter 313A. Section 7 provides in part:

"In addition, if the commission in its discretion determines that the construction of a toll bridge cannot be financed entirely through revenue bonds and that the construction of such toll bridge is necessary, *the commission may advance funds from the primary highway fund to pay for that*

*part of the construction cost, including the cost of approaches and all incidental costs,* which is not paid out of the proceeds of revenue bonds." (Emphasis added.)

The section then directs that this amount be repaid to the primary road fund from bridge tolls after all bridge bonds have been paid and retired.

Section 12 provides in part:

"The commission is authorized and empowered to spend *from annual primary road fund receipts sufficient monies to pay the cost of operation, maintenance, insurance, collection of tolls and accounting therefor and all other charges incidental to the operation and maintenance of any toll bridge administered under the provisions of this Act.*" (Emphasis added.)

There is some doubt whether the plaintiff properly raises objection to that part of section 7 we have set out or whether his complaint is limited to the use of primary road funds as provided in section 12. However, we conclude both are subject to his attack, and we so consider them.

As we understand plaintiff's argument, he says the permissive use of primary funds creates an indebtedness on the part of the state which contravenes Article VII by pledging the general credit of the state to the payment of both the construction and maintenance of the bridge.

For reasons hereafter stated, we disagree. The primary road fund is established by the legislature under chapters 312 and 313, Code of Iowa. Chapter 312 provides for a road use tax fund which includes contributions from various sources, among them the following: (1) all the net proceeds of the registration of motor vehicles under chapter 321; (2) all the net proceeds of the motor vehicle fuel tax or license fees under chapter 324; (3) all revenue derived from the use tax, under chapter 423, on motor vehicles, trailers, and motor vehicle accessories and equipment.

Section 312.2 then provides that this fund shall be distributed by the state treasurer to various departments in specified amounts. The primary road fund receives 47 percent of the total amount in the road use tax fund.

The primary road fund also receives money from other sources under section 313.3, Code, including all federal aid, primary and urban road funds received by the state and all other funds which may by law be credited to the primary road fund.

Section 313.4 specifies that the primary road fund shall be used "in the establishment, construction and maintenance of the primary road system, including the drainage, grading, surfacing, construction of bridges and culverts, the elimination or improvement of railroad crossings, the acquiring of additional right of way, * * * all other expense incurred in the construction and maintenance of said primary road system * * * the maintenance and housing of said state highway commission."

It is this fund which the legislature has said *may* be used to defray both construction and maintenance costs of the proposed bridge, and it is to this use which the plaintiff raises serious objection.

It should be noted that section 313.4 already appropriates the primary road fund for use on the primary road system, including bridges. It is arguable that a reasonable interpretation of section 313.4 would permit the expenditures objected to even without the authority of sections 7 and 12 of chapter 313A. We need not go that far, however, because the primary road fund is properly subject to such legislative disposition as has been made by sections 7 and 12 of the act. State ex rel. Fletcher v. Executive Council, 207 Iowa 923, 935, 223 N.W. 737, 742, contains this statement, "It should be noted here that we are not holding that the *use* of primary road funds derived from motor vehicle licenses and gasoline taxes, for whatever purpose, is unconstitutional. Such question is not before us. We hold only that the *pledging* of

these resources for a future period, to the exclusion of later legislative control, is beyond the power of the particular General Assembly. These [primary road] funds are at all times subject to legislative control by the existing General Assembly. Any General Assembly may, by legislation, devote these existing funds to the construction and maintenance of roads, or may divert them, and such legislation may continue in force until amended or repealed by a later General Assembly."

Plaintiff cites this case to us as supporting his view, but we hold it rather supports the position of the commission.

Furthermore it appears reasonable and desirable that the legislature permit the use of primary road funds, if such use appears necessary, for both construction and maintenance costs. Chapter 313A provides that, when the bonds issued in payment of the bridge are retired, the bridge shall become a part of the primary road system of the state and shall be taken over by the highway commission. Section 313A.30. Much earlier, however, it becomes a public highway, a vital link between Iowa and Illinois, without which Iowa Highway 92 would necessarily terminate at the Mississippi River.

■ The bridge is *de facto* part of the primary road system long before it becomes a part thereof legally. The legislature evidently intended to enable the highway commission to make available now, if necessary, funds to assure successful completion of a bridge which will ultimately become part of the primary road system. This is an application of existing funds which is entirely within legislative power.

A somewhat similar problem was answered in Guthrie v. Curlin, Ky., 263 S. W.2d 240, 243, as we answer it here. See also State ex rel. Kauer v. Defenbacher, 153 Ohio St. 268, 91 N.E.2d 512, 518, 520; Wyatt v. Beall, 175 Md. 258, 1 A.2d 619, 622; State Highway Commission v. Veling, 230 Ky. 381, 19 S.W.2d 967, 972; California Toll Bridge Authority v. Kelly, 218 Cal. 7, 21 P.2d 425, 427; State ex rel. City of Hannibal v. Smith, 335 Mo. 825, 74 S. W.2d 367, 371.

We have reviewed all of plaintiff's complaints under the claim a state debt is created, and we find the act does not violate that portion of Article VII of the constitution.

VII. However, this conclusion still leaves one other matter under Article VII for consideration. Plaintiff also claims the use of these funds is limited to public highways within the state of Iowa by Article VII, section 8, (Constitutional Amendment of 1942), which states that "all motor vehicle registration fees and all licenses and excise taxes on motor vehicle fuel, except costs of administration, shall be used exclusively for the construction, maintenance and supervision of the public highways exclusively within the state or for the payment of bonds issued or to be issued for the construction of such public highways and the payment of interest on such bonds."

We have already mentioned that the primary road fund is made up partially from sources which this constitutional provision limits to use exclusively within this state.

■ Plaintiff insists section 7 and section 12 of the act violate this clause by permitting the use of primary road funds on both construction and maintenance in Illinois. He argues it is obvious that part of the bridge itself, and certainly some of the approaches, lie in that state and the attempt to permit the use of primary road funds for the construction and maintenance of bridges, including approaches, without limitation is a direct violation of this constitutional restriction. We are compelled to agree with this contention.

■ Apparently the highway commission itself recognized this peril for the bond resolution specifies the primary road fund, if used at all, shall be used *only on that portion of the bridge lying within the state of Iowa*. Defendant feels this re-

moves any possible objection, but we do not think so. The act itself still authorizes an unconstitutional use of primary road funds, and it is the statute which must meet constitutional standards here. Because the commission may in a particular case elect not to do what the statute unconstitutionally permits does not save the law from this objection.

We hold the statute permitting use of primary road funds outside the state of Iowa must fall because such funds come partially from sources the constitution limits to use within the state. However, as explained in Division XII, this conclusion only invalidates that particular provision of the act.

VIII. Perhaps we should mention here another matter upon which we disagree with the trial court and which we find to be invalid.

Section 313A.20 provides:

"While any bonds issued by the commission remain outstanding, the powers, duties or existence of the commission or of any other official or agency of the state shall not be diminished or impaired in any manner that will affect adversely the interest and rights of the holders of such bonds. * * *"

Plaintiff says this is an illegal attempt to bind future legislatures and to freeze the Iowa State Highway Commission, both as to personnel and power, as it now exists until all bonds are paid. Defendant counters by saying this section only announces the principle that the state may not pass any law impairing the obligation of a contract.

■ It may be conceded, of course, that the bonds constitute a contract between the commission and the bond holders. It may also be conceded that the state may not impair the obligation thereof. Article I, section 21, Constitution of Iowa; Article I, section 10, Constitution of the United States.

■ However, we think this section of the act does more than the commission admits. The rule against impairment of contract is so well established it seems unlikely the legislature would feel obligated to set out any specific declaration thereof. In our opinion the section goes much further and would illegally restrict any future general assembly in enacting legislation relating to the commission, its activities, or its personnel during the life of the bonds.

■ The authority of a legislature is limited to the period of its own existence. One general assembly cannot bind a future one. State ex rel. Fletcher v. Executive Council, 207 Iowa 923, 931, 223 N.W. 737, 740; Graham v. Worthington, 259 Iowa 845, 870, 146 N.W.2d 626, 642, and citations.

We declare section 313A.20 to be invalid for this reason.

IX. Plaintiff claims many of the provisions of chapter 313A are against public policy. In most instances he recites these complaints without citation of authority. Nowhere is it claimed these public policy objections reach constitutional dimensions.

■ This presents nothing for us to decide. We may pass on the power of the legislature, but not its judgment or discretion, in the exercise of legislative authority.

Except for limitations imposed by either the federal or state constitutions, the general assembly may legislate without restriction.

In 50 Am.Jur., Statutes, section 44, page 61, appears this, "That body [the legislature] is vested with the whole of the legislative power of the state and has authority to deal with any subject * * * except insofar as it is restrained by constitutional provisions. * * *"

In 49 Am.Jur., States, Territories and Dependencies, section 36, page 252, the author states, "Legislative power, which in-

cludes authority to make, alter, and repeal laws, is limited only by the restraint of the federal and the state constitutions."

In Carlton v. Grimes, 237 Iowa 912, 943, 23 N.W.2d 883, 899, we reiterated that legislative authority is vested in the general assembly and then quoted with approval from Carroll v. City of Cedar Falls, 221 Iowa 277, 280, 261 N.W. 652, 654, as follows: "The legislature in this state, therefore, has power to enact any kind of any legislation it sees fit, provided it is not clearly and plainly prohibited by the State or Federal Constitutions. * * * It is also the well-settled rule that any doubt of the legislature's power to adopt an act will be resolved in favor of its constitutionality. * * *" For more recent pronouncements to the same effect, see State ex rel. Cairy v. Iowa-Cooperative Association, 250 Iowa 839, 843, 95 N.W.2d 441, 443, and Bulova Watch Company v. Robinson Wholesale Company, 252 Iowa 740, 746, 108 N.W.2d 365, 369.

Plaintiff asks us to pass upon the wisdom, justice and expediency of chapter 313A. In short he seeks to have us disagree with the general assembly as to the desirability of such legislation and to find it does not best serve what plaintiff conceives to be the public interest.

Perhaps no canon of statutory construction is more firmly established than the one prohibiting courts from meddling with the general assembly's exclusive power of determining what laws it should enact. Of the countless cases to this effect we cite only a few of the more recent ones. Diamond Auto Sales, Inc. v. Erbe, 251 Iowa 1330, 1333, 105 N.W.2d 650, 651; Spurbeck v. Statton, 252 Iowa 279, 284, 106 N.W.2d 660, 663; Green v. City of Mt. Pleasant, 256 Iowa 1184, 1196, 131 N.W.2d 5, 13; and Danner v. Hass, 257 Iowa 654, 661, 134 N.W.2d 534, 539.

We agree with the trial court that plaintiff's propositions raised here are without merit.

X. Plaintiff also cites for our consideration numerous alleged statutory and procedural defects, which fall generally into two categories: First, objections to specific provisions of the act itself; and second, claims that the commission either exceeded the authority granted to it by this chapter or violated certain provisions in the adoption of the bond resolution.

We repeat that many of the plaintiff's objections are made without citation of substantiating authority. Some merely state what plaintiff feels the legislature *should* have provided; others entirely overlook specific provisions of the chapter which render the objections inapplicable. What we said in Division IX concerning legislative authority is of equal force here, and we feel it unnecessary to discuss the separate objections urged. We agree with the findings of the trial court that they are entirely without merit except as to the issue discussed in Division XI.

XI. Plaintiff claims the commission exceeded the authority granted by chapter 313A in several respects. We may, of course, determine if the commission has violated the statutory provisions under which it purports to act, and if so, we may grant appropriate relief. The trial court found these complaints to be without substance, and we adopt those findings and conclusions with one exception.

Section 313A.12 provides in part as follows:

"The commission is hereby authorized and empowered to issue revenue bonds for the acquisition, purchase or construction of any interstate bridge. * * *"

The section then spells out in detail the manner in which and the terms under which such bonds may be issued.

Section 313A.7 provides in part:

"* * * [I]f the commission in its discretion determines that the construction of a toll bridge cannot be financed entirely through revenue bonds and that the con-

struction of such toll bridge is necessary, the commission may advance funds from the primary highway fund to pay for that part of the construction cost, including the cost of approaches and all incidental costs, which is not paid out of the proceeds of revenue bonds. After all revenue bonds and interest thereon issued and sold pursuant to this Act and payable from the tolls and revenues of said bridge have been fully paid and redeemed or funds sufficient to pay said bonds and interest, including premium, if any, have been set aside and pledged for that purpose, *then such amount advanced from the primary road fund shall be repaid to the primary road fund from the tolls and revenues of said bridge before said bridge is made a toll free bridge under the provisions of this Act.*" (Emphasis added.)

These provisions permit the financing of bridge construction either entirely through the issuance of bonds or through the issuance of bonds plus the use of money to be advanced from, and ultimately repaid to, the primary road fund.

The bond resolution passed by the commission proposes to take advantage of the provision permitting the use of primary road funds. The commission further intends to repay the amount advanced, not from the tolls or other bridge revenue, but by the issuance of additional bonds to be paid out of such revenue.

Plaintiff argues there is no authority in the statute or elsewhere to permit the commission to issue bonds for this purpose.

We agree the proposed sale of bonds to replenish the primary road fund is beyond the authority granted by the act. Nowhere in the statute, nor in any reasonable interpretation of its provisions, may such authority be found. The section granting permission to use the primary road fund is explicit in its requirement that any amount of such fund used shall be repaid from the tolls and other revenue from the bridge. The only power to issue

bonds is for the sole purpose of *securing* funds with which to construct the bridge; but the proposal of the commission to issue bonds to repay the advancement made from the primary road fund is not for such purpose at all. At the time such bonds would be issued—far in the future—all construction money would have been long since obtained and used.

The legislature directed that money from the primary road fund used under the authority of section 313A.7 should be repaid from the tolls and other revenues collected from the bridge *before the bridge becomes a free one.* The commission's proposal would prolong the toll-paying period indefinitely. It would require not only payment of the amount advanced from the primary road fund but also payment of interest on that sum to the bondholders.

We are convinced the legislature intended the highway commission should do nothing more than repay the amount advanced from this fund. There is no suggestion the commission should obligate itself to pay interest on money advanced from its own fund. We believe this is a financing plan the statute did not contemplate.

In view of our holding in Division VII, the primary road fund cannot now be used on this project in any event. Perhaps discussion of the proposal concerning the method of repayment is therefore unnecessary. If, however, the general assembly should remove from sections 313A.7 and 313A.12 those provisions which are constitutionally objectionable, the power of the commission to issue bonds to repay the primary road fund for money advanced under section 313A.7 would again become important. For that reason we have given it our consideration now.

We hold the commission is without authority to issue bonds for the purpose of repaying any amounts advanced from the primary road fund under the authority of section 313A.7.

XII. Except for the provisions of Divisions VII, VIII and XI hereof, we affirm the findings of the trial court and hold that the highway commission is authorized to construct the bridge in question and to issue bonds as proposed in the amount of $3,160,000.00 in payment thereof. We further hold the bonds, when issued, will be payable solely from the tolls and other revenue of the bridge and will not be obligations of the state of Iowa.

Our conclusions in Divisions VII, VIII, and XI do not invalidate chapter 313A in its entirety. Courts have a duty to sustain as much of a legislative enactment as possible if the good is separable from the bad. If it appears the legislature probably would not have enacted the law at all if the invalid part had been eliminated, then the whole act must fall.

Important in this consideration is the inclusion of a separability clause in the legislation itself. Here section 39 of chapter 255 provides, "This Act, being necessary for the public safety and welfare, shall be liberally construed to effectuate the purposes thereof. *If any provision of this Act or the application thereof to any person or circumstances is held to be invalid, such invalidity shall not affect other provisions or applications of the Act which can be given effect without the invalid provisions or application, and to this end the provisions of this Act are declared to be severable."* (Emphasis added.)

The act as carried in chapter 313A, Iowa Code Annotated, does not include the emphasized portion, but the Acts of the Sixty-second General Assembly, Chapter 255, page 516, reports the correct text of this section.

It is apparent the legislature intended the rule of severability to apply. Perhaps this rule is best announced in Williams v. Standard Oil Company of Louisiana, 278 U.S. 235, 241, 49 S.Ct. 115, 73 L. Ed. 287, 309, where the court held a severability clause in an enactment replaces a presumption that the statute was meant to be indivisible by a presumption that the invalidity of a part was not to undo the whole. The same rule is announced in 82 C.J.S. Statutes § 92, page 149; 16 Am.Jur. 2d, Constitutional Law, section 126, page 322, section 181, page 409, and is followed by many states.

We, too, adhere to this rule. Lee Enterprises, Inc. v. Iowa State Tax Commission, Iowa, 162 N.W.2d 730, 741. See also discussion in Smith v. Thompson, 219 Iowa 888, 894, 258 N.W. 190, 193, 194.

The portions of chapter 313A which we have said are invalid are severable and were so intended by the general assembly. We hold the invalidity of these provisions does not destroy the entire act, nor interfere with the legislative purpose of providing a procedure for constructing and financing an interstate bridge. This purpose may be fully accomplished without the operation of the invalid portions.

In summary we hold:

1. That part of section 313A.7 (section 7, chapter 255, Acts of the Sixty-second General Assembly) which permits the use of the primary road fund to pay part of the cost of construction is invalid for the reasons set out in Division VII;

2. That part of section 313A.12 (section 12, chapter 255, Acts of the Sixty-second General Assembly) which permits the use of primary road funds for bridge maintenance and operation is invalid for the reasons set out in Division VII;

3. All of section 313A.20 (section 20, chapter 255, Acts of the Sixty-second General Assembly) is invalid for the reasons set out in Division VIII;

4. That part of the bond resolution adopted by the commission which purports to authorize the issuance of bonds to reimburse the primary road fund for any money advanced under section 313A.7 (section 7, chapter 255, Acts of the Sixty-second General Assembly) is beyond the commis-

sion's authority to issue bonds under section 313A.12 (section 12, chapter 255, Acts of the Sixty-second General Assembly) and is consequently void;

5. Chapter 313A, I.C.A., (chapter 255, Acts of the Sixty-second General Assembly) remains in full force and effect except as to the matters set out in (1), (2), and (3) above.

6. Except as to matters set out in (1), (2), (3), and (4) above the judgment and decree of the trial court is affirmed.

This matter is affirmed in part, reversed in part, and remanded for entry of supplemental decree in accordance herewith.

Affirmed in part, reversed in part and remanded.

LARSON, MOORE, MASON and RAWLINGS, JJ., concur.

BECKER, J., GARFIELD, C. J., and SNELL and STUART, JJ., dissent.

BECKER, Justice (dissenting).

I concur in the majority opinion except for Division VII. As to that Division, I dissent.

In State v. Ramos, Iowa, 149 N.W.2d 862, 865, we state: "The general rule that all statutes must be so construed as to avoid unconstitutionality if that can reasonably be done is adhered to in this state. Thus where a statute is fairly open to two constructions one of which will render it constitutional and the other unconstitutional or of doubtful constitutionality, the construction by which it may be upheld will be adopted. Kruck v. Needles, [259] Iowa [470, 478], 144 N.W.2d 296 [301, 302]; Kruidenier v. McCulloch, 258 Iowa 1121 [1133], 142 N.W.2d 355 [362]."

Sections 7 and 12 do not directly authorize expenditures of funds for public highways or other purposes outside the state. Only by noting that one end of the bridge and the approaches in connection therewith will necessarily be outside the state, and so interpreting the statute as to illegally allow expenditures of road funds, do we reach such a result. On the other hand if we construe sections 7 and 12 within the framework of our Iowa constitution there is no doubt the Highway Commission has no authority to use primary road funds for any portion of the bridge or approaches located outside the state of Iowa. This is the constitutional interpretation of the statute and is the interpretation we should adopt.

It is also the interpretation adopted by the Highway Commission in its bond resolution when it provided the primary fund, if used at all, *shall be used only on that portion of the bridge lying within the state of Iowa.*

We have said the General Assembly cannot by subsequent legislation define the scope of constitutional provisions. That is a judicial function. But legislative construction will be given serious weight by the courts. Edge v. Brice, 253 Iowa 710, 113 N.W.2d 755; Carlton v. Grimes, 237 Iowa 912, 23 N.W.2d 883. Executive interpretation is also entitled to our careful consideration.

In State ex rel. McElhinney v. All-Iowa Agricultural Assn., 242 Iowa 860, 48 N.W. 2d 281, 285, we said: "A well recognized rule is that, while not controlling, courts give much weight to the construction of statutes by administrative officials charged with their operations and enforcement. Especially where such construction is of long standing it will not be lightly discarded by the courts. (Cases cited).

"Another rule is that the practical construction of a statute, the meaning given it by contemporary usage, is presumed to be the true one and will not be disturbed except for cogent reasons. (Cases cited)."

The above views are also supported in: Allen v. Burkhart, Okl., 377 P.2d 821; State ex rel. W. Va. Board of Education v.

Sims, 143 W.Va. 269, 101 S.E.2d 190; State ex rel. Curators of University of Mo. v. Neill, Mo., 397 S.W.2d 666.

Here the concurrent executive interpretation of sections 7 and 12 clearly excludes the idea the Highway Commission can expend primary road funds on any portions of the bridge outside the state of Iowa. It recognizes any such action would be unconstitutional and thus illegal.

We should interpret sections 7 and 12 to empower the Highway Commission to use primary road funds for bridge construction and maintenance only of those parts of the bridge within the state of Iowa. So interpreted, both by the Highway Commission and this court, the provisions would be constitutional.

GARFIELD, C. J., and SNELL and STUART, JJ., join in this dissent.

### Supplemental Opinion

LeGRAND, Justice.

The opinion filed herein November 12, 1969 is hereby supplemented as follows:

In Division VIII of that opinion we declared all of section 313A.20, Iowa Code Annotated, invalid because it illegally attempted to bind future legislatures as to certain matters involving the Iowa State Highway Commission.

The section in question, however, also deals with another entirely independent and separable subject: the remedies available to bondholders to compel compliance by state departments and officers with the provisions of chapter 313A. This portion of the section was not challenged by plaintiff and is a valid and enforceable statutory enactment.

We now hold only the following provision contained in section 313A.20 to be invalid: "While any bonds issued by the commission remain outstanding, the powers, duties or existence of the commission or of any other official or agency of the state shall not be diminished or impaired in any manner that will affect adversely the interest and rights of the holders of such bonds. * * *."

The reasons for this conclusion are set out in Division VIII of our original opinion.

The remainder of section 313A.20 is specifically held to be valid.

Except as modified herein our opinion of November 12, 1969 is reaffirmed and upon the filing of this supplemental opinion defendants' petition for rehearing is denied.

All Justices concur, except REES, J., who takes no part.